**David C. ROTH, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 00–638C.**

United States Court of Federal Claims.

April 15, 2003.

Guy J. Ferrante, Springfield, Virginia, attorney of record for plaintiff.

Arlene Pianko Groner, Washington, D.C., with whom was Robert D. McCallum, Jr., Assistant Attorney General, for defendant.

*OPINION*

REGINALD W. GIBSON, Senior Judge.

## I. INTRODUCTION

This military pay case is before the court on cross-motions for summary judgment based upon the administrative record. Defendant's motion *supra* is also filed in the alternative raising a RCFC 12(b)(4)[1] motion to dismiss for failure to state a claim upon which relief can be granted. Mr. Roth, the plaintiff herein, has properly pleaded statutory and regulatory violations by the Air Force Board for Correction of Military Records ("AFBCMR") that are both justiciable and remediable in this court, therefore defendant's motion to dismiss is hereby DENIED.

Additionally, and for reasons delineated below, plaintiff's motion for summary judgment, seeking (i) reinstatement into the U.S. Air Force at his involuntary separation rank of major, (ii) back pay, allowances and other benefits, (iii) complete non-prejudicial correction of his military service records, and (iv)

voidance of promotion non-selections for calendar years ("CY"s) 1993 and 1994, is hereby GRANTED. Therefore, defendant's motion for summary judgment is hereby DENIED.

## II. JURISDICTION

### Tucker Act

Pursuant to the Tucker Act, 28 U.S.C. § 1491(a) (1994), in relevant part:

"(1) The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department."

"(2) To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just."

The Tucker Act, however, is solely premised upon jurisdiction and alone does not convey any substantive right upon a party to sue the government. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Therefore, to properly establish jurisdiction in this court, a party must concurrently plead entitlement to monetary relief pursuant to some other federal law or regulation. *Eastport Steamship Corp. v. United States,* 178 Ct.Cl. 599, 606, 372 F.2d 1002, 1007 (1967).

### Military Pay Act

■ With respect thereto, the Military Pay Act, 37 U.S.C. § 204 (1994), is one such money-mandating statute. *Spehr v. United States,* 51 Fed.Cl. 69, 81 (2001). Mr. Roth, prior to his mandatory involuntary retire-

---

1. As of May 1, 2002, the Rule number was changed to RCFC 12(b)(6) to correspond with the Federal Rules of Civil Procedure.

ment, indeed had a statutory entitlement as "a member of a uniformed service who is on active duty" to receive basic pay. 37 U.S.C. § 204(a)(1). "If his discharge was involuntary [as well as] improper, [Mr. Roth's] statutory right to pay was not extinguished, and thus serves as a basis for Tucker Act jurisdiction." *Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir.1995). Plaintiff herein alleges that his separation from service was factually and legally "involuntary and improper," and, therefore, he has properly pleaded entitlement to back pay pursuant to federal law.

*Statute of Limitations*

With respect to the foregoing, for a claimant to proceed under the Tucker Act, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501 (1994). The six-year statute of limitations for suits against the government in the Court of Federal Claims "acts as an 'express limitation on the Tucker Act's waiver of sovereign immunity.'" *Franconia Associates v. United States*, 240 F.3d 1358, 1362 (Fed.Cir.2001) (citation omitted).

In that connection, a retired officer's claim for back pay accrues "[as of] the date of retirement, at the very least, [when] all events had occurred fixing the government's potential liability for a wrongful denial of promotion." *Coon v. United States*, 30 Fed. Cl. 531, 540 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir.1994). Mr. Roth's claim, here at bar, first accrued on or after July 1, 1995, when the alleged unlawful prior acts of the government finally culminated in an event, to wit, plaintiff's mandatory involuntary retirement, fixing liability. Plaintiff's claim, as filed in this court on October 27, 2000, is therefore timely, and is properly pending before us.

## III. BACKGROUND

Mr. Roth's military career with the Air Force began in June 1977 when he entered active duty as a Reserve second lieutenant. By December 1977, he had attained extended active duty status. Soon thereafter, he became Regular Air Force and was promoted to the rank of captain. Through and including his Officer Evaluation Report ("OER") dated June 20, 1983, Mr. Roth had received impeccable performance ratings, including an indorsement by a brigadier general. His next performance rating, however, in March 1984, was not as glowing and there was a total absence of high level indorsement(s). During the interim of the two rating periods, *i.e.*, June 1983 and March 1984, certain allegations of personal wrongdoing on the part of Mr. Roth came under investigation by the Air Force Office of Special Investigations ("AFOSI"). Based on said *allegations alone,* Mr. Roth was downgraded on his March 27, 1984 OER,[2] receiving a "Meets Standard" rating in the Professional Qualities category on whether "Off duty personal problems detracted from an otherwise excellent professional image."

Although the AFOSI findings ultimately absolved him of any and all charges of wrongdoing,[3] Mr. Roth, due to the downgraded 1984 OER, was twice non-selected or passed over for promotion to the rank of major in calendar years 1987 and 1988. As a consequence of having two pass overs, he was separated involuntarily from the Air Force on January 31, 1989. Following thereon in March 1989, Mr. Roth applied to the AFBCMR for relief from the downgraded 1984 OER and its resultant harm, *i.e.*, the promotion pass overs, and such relief was ostensibly granted on October 31, 1989.[4] Subsequent thereto, two SSBs were convened on May 7, 1990, to consider plaintiff's retroactive promotion for calendar years 1987 and 1988. The SSB for CY87 did not recommend plaintiff for promotion to major,

---

2. It is a violation of Air Force regulation, AFR 36–10 (1982), for an *on-going* investigation to be considered or in any way impact a *current* rating period.

3. The AFOSI investigation was closed on July 6, 1984. AR at 9.

4. Defendant contends that all relief specifically requested by plaintiff in 1989 was granted. Def. Motion at 11–12.

while the SSB for CY88 in fact concluded that Mr. Roth would have been selected in that year.

As a result of the decision by the CY88 SSB, Mr. Roth made a formal request on July 16, 1990, to be restored to active duty. In that request letter, Mr. Roth also addressed the crucial matter of the gap in his record that would now exist from the time of his unlawful separation on January 31, 1989. Plaintiff then informed the Air Force that he was presently enrolled in an advanced degree program that was half completed,[5] and asked that he be allowed to complete said program so that a legitimate, non-prejudicial explanation could be placed in his file regarding the gap in his record.

Apparently, through an assignment at the Air Force Institute of Technology ("AFIT"), active duty persons may attend civilian colleges and universities and receive a Training Report ("TR") in their military records to account for said matriculation period. Usually an AFIT assignment is initiated through a sponsoring department such as the Air Force Academy, Air Force Intelligence, or the service member's latest duty station, none of which would voluntarily sponsor Mr. Roth at the time of his request.[6] The AFBCMR was informed however that it had the authority to "direct" that plaintiff be sent there, but it opted not to exercise that authority.[7]

When Mr. Roth was informed via an Air Force advisory opinion (preceding the final decision by the AFBCMR) that there would be no sponsorship for an AFIT assignment, he wrote an impassioned letter to the AFBCMR urging it to do right by him.[8] Instead, the AFBCMR denied Mr. Roth's request, albeit he was not directed to return to active duty until June 27, 1991, at the rank of major, retroactive to January 1, 1989, thus leaving a 29–month gap in plaintiff's active service record. Awkwardly, by way of explanation, the AFBCMR ordered that plaintiff's record reflect that his duty station during that 29–month period was "his home." Consequently, having received only three OERs in the rank of major by October 1993,[9] plaintiff was non-selected for promotion to lieutenant colonel then, and again in 1994, causing his mandatory retirement from active duty effective July 1, 1995.

On or about August 29, 1995, plaintiff submitted a Request for Reconsideration which the Air Force recommended be denied—primarily contending that "the applicant has not been diligent in the maintenance of his records"[10]—and said request for reconsideration was in fact denied by the AFBCMR on June 2, 1999. It was the AFBCMR's finding, *inter alia*, that "the evidence presented did not demonstrate the existence of probable material error or injustice." AR at 70.

5. Upon his involuntarily separation in January of 1989, Mr. Roth at some point thereafter applied to, and was accepted in, a Ph. D. program at the Claremont Graduate School in Claremont, California. While there, he pursued a Ph.D. in International Political Economy. Perhaps intuitively, or advisedly, he perceived that it would be in his best interest to make constructive use of his time during his involuntary separation pending the outcome of his request for reinstatement. And that he did.

6. While the AFIT reasoned that it did not directly sponsor students, the Air Force Academy and Air Force Intelligence (Mr. Roth's latest duty station prior to his involuntary separation in 1989) simply declined to do so. The reason offered by the Air Force was that "there is no graduate education quota in his degree area established by the Air Force for FY 91." AR at 53.

7. *See* Inter–Office Routing Slip from Howard B. Kravitz, Capt., dated September 20, 1990. AR at 52.

8. Plaintiff's letter perhaps contained certain ill-advised word choices insofar as asking that the Air Force not "screw him over again" by not permitting him to (i) complete the Ph.D program begun due to his improper involuntary separation, and thereby (ii) accrue military credit for that endeavor by allowing him an AFIT assignment to account for the gap in his service record. Clearly plaintiff's words were indicative of righteous indignation. Notwithstanding the majority of the otherwise persuasive language in plaintiff's letter, the AFBCMR not surprisingly focused in on those particular words and placed them in its report under the section "Applicant's Review of Air Staff Evaluation."

9. Other candidates having continuous service would be competing with five to six OERs.

10. *See* Air Force Evaluation, Second Addendum to Record of Proceedings, AFBCMR, June 2, 1999. AR at 63.

Plaintiff filed suit in this court on October 27, 2000, alleging that (i) the 1999 AFBCMR decision was arbitrary, capricious, and contrary to law; (ii) he was entitled to promotion consideration on a fair and equitable basis; (iii) his 1993 and 1994 promotion non-selections were unlawful because they were based upon a record that did not reflect his career on a fair, equitable, or accurate basis; and therefore, (iv) he is entitled to active duty pay, allowances, and other benefits at the rank of major that he has been denied since his unlawful involuntary retirement on July 1, 1995. Finally, he contends that this court should order the Secretary of the Air Force to correct his military records to delete his unlawful promotion non-selections and involuntary retirement and reflect that he has served continuously on active duty. Pl. Compl. at 4–5.

## IV. DISCUSSION

### A. Standards of Review

*Justiciability*

"Even where a court possesses jurisdiction to hear a claim, it may not do so in cases where the claim presents a nonjusticiable controversy." *Adkins,* 68 F.3d at 1322. "A controversy is 'justiciable' only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" *Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.1988) (quoting *Greene v. McElroy,* 254 F.2d 944, 953 (D.C.Cir.1958)). "Justiciability is a particularly apt inquiry [or issue] when one seeks review of military activities." *Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir. 1993). It has long been established that it is "beyond the institutional competence of courts to review" the substance of decisions that have been left exclusively to the discretion of the military.[11]

However, "[a] court may appropriately decide whether the military followed procedures because by their nature the procedures limit the military's discretion." *Murphy,* 993 F.2d at 873. When procedural violations are alleged, the tests or standards against which a court measures the conduct of the military are the applicable statutes and regulations. *Id.* Mr. Roth's claim herein is clearly predicated upon alleged violations of proprietary (Air Force) regulations as well as federal laws governing military administrative functions and is therefore procedural in nature, *ergo,* justiciable.[12] As a necessary consequence thereof, defendant's RCFC 12(b)(4) motion to dismiss for failure to state a claim upon which relief can be granted is rendered untenable.

*AFBCMR Decision*

"When called upon to review a decision of a corrections board, or of a Secretary taken upon recommendation from a corrections board, the standard of review is whether the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States,* 163 F.3d 1304, 1312 (Fed.Cir.1998) (citing *Skinner v. United States,* 219 Ct.Cl. 322, 594 F.2d 824 (1979)). Therefore, the purpose of this court's review is not to substitute its own opinion for that of the AFBCMR, thereby becoming a super-correction board. Rather, its purpose is to determine whether the AFBCMR's finding, that "the evidence presented did not demonstrate the existence of probable material error or injustice," is sustainable on the record and in accordance with the operative laws.

*Administrative Record*

This court treats motions for summary judgment based upon the administrative record under RCFC 56.1, the same as motions for summary judgment pursuant to RCFC 56. *Nickerson v. United States,* 35 Fed.Cl. 581, 588 (1996), *aff'd,* 113 F.3d 1255 (Fed.Cir.

---

11. *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed.Cir.2002). *See also Adkins,* 68 F.3d at 1322 ("The merits of a service secretary's decision regarding military affairs are unquestionably beyond the competence of the judiciary to review.").

12. " 'It is established, of course, that [] federal courts have the power and the duty to inquire whether a military discharge was properly issued under the Constitution, statutes, and regulations.' " *Sanders v. United States,* 219 Ct.Cl. 285, 303, 594 F.2d 804, 814 (1979) (quoting *Matlovich v. Secretary of Air Force,* 591 F.2d 852, 859 (D.C.Cir.1978) (citations omitted)).

1997). Summary judgment is proper when there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Substantive law identifies which facts are material, such that only those operative facts that could affect the outcome of a suit can properly preclude summary judgment. *Id.* at 248, 106 S.Ct. 2505.

On summary judgment, the inferences to be drawn from the underlying facts contained in such materials as affidavits, depositions, and exhibits must be viewed in a light most favorable to the party opposing the motion. *Id.* The trial judge's primary function then is not to weigh the evidence and determine the truth of the factual matter, but rather it is to determine whether there is a genuine factual issue for trial.

Here at bar, the substantive legal question before the court is: whether the AFBCMR's decision—that "the evidence presented [to it] did not demonstrate the existence of probable material error or injustice"—was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. On this record, the court may properly grant summary judgment upon the *circumscribed standard of* review of board decisions, *supra*, absent any genuine issues of material fact, and the movant is entitled to summary judgment as a matter of law.

## B. The Merits

To briefly recap, the issues before us on review are: (1) the AFBCMR's denial of relief for the alleged unlawful basis for plaintiff's CY93 and CY94 promotion non-selections; (2) those non-selections allegedly occurred due to plaintiff's incomplete or otherwise inaccurate record; (3) plaintiff's record was incomplete or inaccurate due in part to the AFBCMR's alleged failure to adequately account for a 29–month gap in service (for which notations were made in plaintiff's record reflecting that he was inactive); (4) that 29–month gap however was through no fault of plaintiff, but instead the result of unlawful actions by the Air Force in 1984; and (5) other alleged errors or inaccuracies

in plaintiff's record include reduced OER indorsements in 1984 and 1985, notations of corrections on plaintiff's 1984 OER, end of tour honors earned in 1987 and 1989 but not awarded, and an un-rated 11–month period of active service, all of which are rooted in the same 1984 unlawful acts by the Air Force.

Pursuant to 10 U.S.C. § 1552(a)(1) (1998), in pertinent part:

"The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice.... [S]uch corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department."

Thus the purpose of military correction boards is clearly to provide a means for correcting "any" military records "of the Secretary's department" to remedy "error" or "injustice." 10 U.S.C. § 1552(a)(1). In carrying out its function, a correction board must determine "[w]hether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record." 32 C.F.R. § 865.4(1)(4). "Since the errors or injustices which might require correction were originally made by the military, Congress made it manifest [via 10 U.S.C. § 1552(a) ] that the correction of those errors and injustices was to be in the hands of civilians." *Weiss v. United States*, 187 Ct.Cl. 1, 11, 408 F.2d 416, 421 (1969) (quoting *Proper v. United States*, 139 Ct.Cl. 511, 526, 154 F.Supp. 317, 326 (1957)).

"[I]t is not enough [however] for the plaintiff to show merely that an error or injustice was committed in the administrative process; he must go further and either [1] make a showing that the defect *substantially affected* the decision to separate him or relieve him from active duty, or [2] at least he must set forth enough material to impel the court to direct a further inquiry into the nexus between the error or injustice and the adverse action." *Hary v. United States*, 223 Ct.Cl. 10, 15–16, 618 F.2d 704, 707 (1980) (emphasis added).

The administrative record at bar reveals that the Air Force itself found four (4) errors in Mr. Roth's military records and advised the AFBCMR that corrections were warranted which the AFBCMR declined to follow, thus: (1) the absence of an OER for the 11–month period of March 8, 1988 through January 30, 1989, which was required by regulation; (2) unjust lower indorsement levels on OERs for March 1984, January and June 1985; (3) lack of award of an end of tour decoration from Ramstein AB in 1989; and (4) upon completion of the foregoing corrections to plaintiff's record, he should receive SSB promotion consideration for CYs 1993 and 1994. AR at 64–69. Other issues raised by Mr. Roth where the Air Force did not recommend corrections in his favor are discussed in each of the AFBCMR's findings *infra.*

Clearly, the four (4) findings or recommendations *supra* made by the Air Force to the AFBCMR amount to unequivocal admissions of error or injustice. On balance, said admissions alone operate to undermine and discredit the AFBCMR's determination that "the evidence presented did not demonstrate the existence of probable material error or injustice." Based upon the foregoing, the AFBCMR's conclusion is strained, at best, where the Air Force has admitted that plaintiff's record was substantially incomplete, rendering it unjust by operation of law.[13] We therefore find that the AFBCMR's decision to deny relief to plaintiff at least on those admitted errors by the Air Force was arbitrary and capricious.

Underlying the incongruity between the errors admitted by the Air Force and the AFBCMR's decision is the fact that although the Air Force acknowledged the errors *supra,* its overall recommendation to the AFBCMR nevertheless was to deny all relief to plaintiff based upon laches. That is to say, it averred that "the applicant has not been diligent in the maintenance of his records." AR at 63. The AFBCMR, however, declined to base its decision on laches in light of *Detweiler v. Pena,* 38 F.3d 591, 598 (D.C.Cir.1994), holding that section 205 of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C. app. § 525,[14] suspends the correction board's three-year statute of limitations, pursuant to 10 U.S.C. § 1552,[15] during a service member's period of active duty. AR at 153.

If that were indeed the case, logically at least the admitted errors should have been corrected by the AFBCMR. Instead, the AFBCMR refused to order any corrections at all. That is severe where the errors admitted by the Air Force patently violated the statutory requirement that the records placed before promotion boards must be "substantially complete, and must fairly portray the officer's record." *Weiss,* 187 Ct.Cl. at 7, 408 F.2d at 419.

Given the totality of the foregoing circumstances in this case, it is curious that the Air Force would maintain the position that it has, but it is nothing short of neglect for the AFBCMR to legitimize such a position. "More importantly, it is difficult to find in the opinion of the AFBCMR how much weight, if indeed any weight [at all], was placed on the

---

**13.** Discussed in detail *infra. See Weiss v. United States,* 187 Ct.Cl. 1, 7, 408 F.2d 416, 419 (1969) (placing before a promotion board incomplete documents that are prejudicial in nature cannot fairly portray an officer's record which constitutes a clear violation of statute, to wit, 10 U.S.C. §§ 576 and 615, formerly § 5706). Furthermore, the administrative record is fraught with competent evidence from higher-ranking officials in the Air Force (*i.e.,* statements from senior officers in plaintiff's chain of command), AR at 136–40 and 145–47, tending to "show[ ] that the defect[s] [alleged by Mr. Roth] *substantially affected* the decision [not to promote him and] to separate him or relieve him from active duty." *Hary,* 223 Ct.Cl. at 15, 618 F.2d at 707.

**14.** Section 205 provides in pertinent part:

"The period of military service shall not be included in computing any period now or hereafter to be limited by any law ... for the bringing of any action ... in any court, board ... or other agency of government by or against any person in military service ... whether such cause of action ... shall have accrued prior to or during the period of such service."

**15.** 10 U.S.C. § 1552(b) provides in relevant part: "No correction may be made under subsection (a)(1) unless the claimant ... files a request for the correction within three years after he discovers the error or injustice."

fact [that] virtually all [of] plaintiff's military problems stemmed from an original injustice *committed by the Air Force itself."* *Yee v. United States,* 206 Ct.Cl. 388, 394, 512 F.2d 1383, 1385 (1975) (emphasis in original).

Defendant argues that the plaintiff was granted the specific relief that he requested in 1989, to wit, to change the rating on the March 1984 OER, and submit him to two SSBs for CY87 and CY88, whereby plaintiff was reinstated based upon the outcome of the CY88 SSB. The *Yee* court, however, rejected the very same argument made by the defendant in that proceeding, finding that "The failure of the AFBCMR to take [an] additional step rendered its decision only a partial correction. And in this case, a partial correction was no correction at all." *Yee,* 206 Ct.Cl. at 395–96, 512 F.2d at 1386.

In *Yee,* the AFBCMR failed to adequately account for a 5–year gap in the military record of Mr. Yee, which occurred due to a prior unjust separation by the Air Force. Within four months of his reinstatement to active duty at his separation rank of captain, Mr. Yee was placed before a selection board for promotion to major, with only *one* OER in his record, and needless to say he was passed over. Mr. Yee appealed to the correction board regarding the recent pass over, expressing concern that the pass over may affect future promotion consideration. The Board agreed and deleted the pass over, but did nothing to adequately address the 5–year gap in plaintiff's record. Consequently, 11–months later, plaintiff was once more placed before a promotion board, by then with three OERs in his record, and again not selected. Plaintiff initiated another appeal to the AFBCMR, and while said appeal was pending, plaintiff was again passed over, then subsequently discharged from active duty.

The Court of Claims found in *Yee,* that:

"By defendant's own admissions, plaintiff had been, on two separate occasions, the victim of injustices caused by the Air Force: first, when plaintiff was erroneously discharged in 1965; and second, when plaintiff's name was put before a Selection Board a mere four months after returning to active duty. *What is not admitted, but is clear from the record, is that plaintiff continued to suffer from these two injustices because inadequate corrective action was taken to prevent recurring problems arising from the original error of the Air Force."*

*Yee,* 206 Ct.Cl. at 395, 512 F.2d at 1386 (emphasis added).

We adopt this finding of the Court of Claims *in toto,* inasmuch as it is apposite to the case *sub judice.* It is clear beyond cavil that the chronology of events originating from the unlawfully based 1984 OER ordeal reads like a "parade of horribles" being perpetually visited upon, and infectiously tainting, the hoped-for stellar, but presently derailed, military career of Mr. Roth. Unquestionably the AFBCMR was created to prevent such atrocities, to provide objectivity and fairness where, perhaps, the Air Force cannot or will not.[16]

Indeed the singular purpose of military correction boards is to provide a means for correcting military records to remedy error or injustice. 10 U.S.C. § 1552(a)(1). Thus, "when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its [primary] mandate. And such a violation, [on this record] evidence, is arbitrary and capricious." *Yee,* 206 Ct.Cl. at 397, 512 F.2d at 1387 (citing *Skaradowski v. United States,* 200 Ct.Cl. 488, 471 F.2d 627 (1973); *Duhon v. United States,* 198 Ct.Cl. 564, 461 F.2d 1278 (1972)).

The obligation placed upon military correction boards to effect just and full relief is irrefutable. For example, "a claimant can often found [*sic* ] a new cause of action, or a 'continuing' claim, [based] upon a favorable determination by [a] Correction Board (or comparable military tribunal) where that determination stops short of giving the full relief it was compelled in law to grant on the presentation then made."[17] That is to say, that military correction boards have an

---

16. *See Weiss,* 187 Ct.Cl. at 8, 408 F.2d at 420.

17. *DeBow v. United States,* 434 F.2d 1333, 1335, 193 Ct.Cl. 499, 503 (1970) (citing *Hankins v.* *United States,* 183 Ct.Cl. 32, 34 (1968)). *DeBow* is cited to here, as was cited to by plaintiff, not for the purpose of invoking the "half-a-loaf"

"abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant *thorough* and fitting relief." *Caddington v. United States,* 147 Ct.Cl. 629, 634, 178 F.Supp. 604, 607 (1959) (emphasis added). The record evidence in the case here at bar is overwhelming that the AFBCMR acted to the contrary.

The court will now address each decision made by the AFBCMR in response to plaintiff's six (6) requests for relief, *seriatim:*

■ *Request (i):* That Mr. Roth's "records be corrected to reflect direct promotion to the grade of lieutenant colonel as if selected by the Calendar Year (CY) 1993A Lieutenant Colonel Board." AR at 61.

*AFBCMR's decision:*

"Insufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice warranting favorable consideration of the applicant's request for direct promotion. Applicant's contention that his record was not 'substantially complete' at the time of his CY93 and CY94 promotion considerations because of omissions that can be traced directly to his now-corrected 1984 OER and the 11–month period [18] he was not on active duty are duly noted. However, after careful consideration of the evidence provided, we have seen no evidence which would lead us to believe that *his records were not so inaccurate or misleading* that the members of the duly constituted selection board, applying the complete promotion criteria, were precluded from rendering a reasonable decision concerning his promotability in comparison to his peers."

AR at 68 (emphasis added).

We find the AFBCMR's decision here to be arbitrary and capricious where it has pro-

duced findings in clear violation of operative statutory and case law as prescribed below:

"The fundamental ground rule is that 'the selection procedure must follow the law. The documents which are sent to a Selection Board for its consideration therefore must be substantially complete, and must fairly portray the officer's record. If a Service Secretary place[s] before the Board an alleged officer's record filled with prejudicial information and omits documents equally pertinent which might have mitigated the adverse impact of the prejudicial information, then the record is not complete, and it is before the Selection Board in a way other than as the statute [10 U.S.C. §§ 576 and 615, formerly § 5706] prescribes.' "

*Porter v. United States,* 163 F.3d 1304, 1311 (Fed.Cir.1998) (quoting *Weiss v. United States,* 187 Ct.Cl. 1, 7, 408 F.2d 416, 419 (1969)).

Clearly, "10 U.S.C. § 5706 provides that a Selection Board be [given] 'the records of all officers whose names are furnished to the board.' [And][t]he Congressional purpose would dictate that the 'record[s]' required to be furnished under that section be complete and not misleading." [19] *Weiss,* 187 Ct.Cl. at 5, 408 F.2d at 418. At variance therewith, the AFBCMR herein applied a different standard, to wit, *"his records were not so inaccurate or misleading"* that the selection board was *"precluded from rendering a reasonable decision,"* that has no basis in law as we know it.

To exacerbate matters, the foregoing AFBCMR's decision is undermined further by (1) the admissions of the Air Force that certain corrections are warranted,[20] *ergo,*

(time-limitations) doctrine, as said doctrine is not required in this case, but for its important admonition to record correction boards that their legal (and moral) obligation cannot subsist unfulfilled.

**18.** This should read the "29–month" period.

**19.** Comparable language succeeding that in § 5706 is found in § 576 of title 10: "The Secretary concerned shall furnish to each selection board . . . [t]he names and pertinent records of

all officers in each grade . . . to be considered." 10 U.S.C. § 576(a)(2) (1998).

**20.** (1) The absence of an OER for an un-rated 11–month period which was required by regulation; (2) undue lower indorsement levels on OERs for March 1984, January and June 1985; (3) lack of award of an end of tour decoration from Ramstein AB in 1989; and (4) upon completion of the foregoing corrections to plaintiff's

plaintiff's record is substantially incomplete; and (2) the determination of the *Yee* court that a substantial gap in one's military record lacking adequate explanation is facially prejudicial.[21] Where plaintiff here alleges, and this court agrees *infra*, that the 40–month (aggregate) gap[22] in his military record lacked an adequate explanation, said record was thus tainted with prejudicial information.

Consequently, and in view of the foregoing, we find that the AFBCMR's decision against directly promoting Mr. Roth to lieutenant colonel (i) was not made in accordance with law, and (ii) its reasoning therefor is insufficient to overcome the prejudicial gap in plaintiff's military record and the admissions by defendant that plaintiff's record is substantially incomplete. We, of course, recognize that the ultimate issue of promotion is solely within the province of the AFBCMR.[23]

Turning now to plaintiff's alternative requests, *infra*, the AFBCMR concluded that "insufficient relevant evidence has been presented to demonstrate the existence of probable error or injustice warranting corrective action." AR at 61. As we noted *supra*, the AFBCMR is charged with an "abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and *to take steps to grant thorough and fitting relief.*" *Caddington*, 147 Ct.Cl. at 634, 178 F.Supp. at 607 (emphasis added). Against that backdrop, we shall examine the remaining findings of the AFBCMR to test the integrity of each, that is, to determine whether they can be sustained on the record.

■  *Request (ii):* That "a Training Report be inserted in [Mr. Roth's] files reflecting enrollment in an AFIT program during the time between his January 31, 1989 separation

and June 27, 1991 reinstatement," *i.e.,* the 29–month gap. AR at 61.

*AFBCMR's decision:*
"Applicant's request that a Training report be inserted in his files reflecting enrollment in an AFIT program during the time between his 1989 separation and 1991 reinstatement is duly noted. However, he was not in an AFIT program during the time period in question. Therefore, we find no basis to favorably consider this request. To do so would create an erroneous and misleading record."
AR at 68.

In July 1990, Mr. Roth learned that he had been retroactively selected for promotion to major by a CY88 SSB, and was thus eligible for reinstatement to active duty. By that time, Mr. Roth had been unjustly separated from the Air Force for 17 months, during which time he had enrolled in a full-time advanced degree program[24] at the Claremont Graduate School in Claremont, California. In his July 1990 request for reinstatement to active duty, plaintiff asked the Air Force to permit him to complete the Ph.D. program at Claremont by entering him into an AFIT advanced degree program. Plaintiff wrote, in relevant part:

"This would also be the best solution for correcting my military records to appear as though there has been no break in my military service, since OERs are not written on personnel while they are participating in an AFIT advanced degree program. Otherwise, there will be a gap in my records where OERs should have been written, which could have an adverse effect on future opportunities for promotion."
AR at 49.

The AFBCMR responded that it was unable to obtain AFIT sponsorship for Mr. Roth at that time, concluding:

record, he should receive SSB promotion consideration for CYs 1993 and 1994.

21. *Yee*, 206 Ct.Cl. at 395, 512 F.2d at 1386 ("We believe it would have been virtually impossible for any Selection Board to give proper consideration to plaintiff unless it had access to an adequate explanation of the 5–year gap caused by the Air Force.").

22. An 11–month gap resulted from the un-rated period of March 8, 1988 through January 30,

1989, during which time Mr. Roth served at Ramstein AB; and a 29–month gap from January 31, 1989 though June 26, 1991, accumulated while Mr. Roth was first involuntarily separated.

23. *See Yee*, 206 Ct.Cl. at 399, 512 F.2d at 1388 ("Courts generally are not in the 'promotion business.' ") (citations omitted).

24. A Ph.D. program in International Political Economy at the Center for Politics and Policy.

"We believe that, in determinations of this nature, the needs of the service are of primary concern and take precedence over the needs of the individual. The Air Staff has indicated that there is no education quota in his degree area during FY 1991. We have no good reason to dispute this Statement or to find that the applicant's assignment to AFIT would be in the service's best interests at this time."

AR at 43.

Notwithstanding the lack of *voluntary* AFIT sponsorship from the Air Force Academy or Air Force Intelligence, none was required for the AFBCMR to perform under its mandate *"to take steps to grant thorough and fitting relief." Caddington,* 147 Ct.Cl. at 634, 178 F.Supp. at 607. To be sure, the AFBCMR was advised by the Air Force itself that it (the board) had the plenary authority to "direct [that] we send him to AFIT if they wish." AR at 52.

Defendant argues that it would be unfair to those who competed for entry into an AFIT program to allow plaintiff to benefit from an assignment without so competing, and would create a fictitious and misleading record. This is not so. Active duty military persons are permitted to attend civilian colleges and universities through AFIT advanced degree programs. In that connection, this court takes judicial notice of the fact that the Claremont Graduate School is an esteemed, highly competitive institution to which plaintiff was accepted. We also observe that defendant has in the past permitted an *ex post facto* AFIT assignment for an unjustly separated service member's matriculation at a civilian college/university to account for the gap in the service member's record upon reinstatement to active duty.[25] For the foregoing reasons, we find defendant's arguments unpersuasive.

Next defendant blames plaintiff for the delay in his orders to report to active duty because it was pursuant to plaintiff's request that he was not ordered to report to active duty until June 1991.[26] Indeed plaintiff's request to complete the Ph.D. program was twofold: (i) to complete a program which he had begun as a direct result of defendant's unlawful actions in 1984, and (ii) to provide a legitimate basis for the explanation of the gap that would result from his unlawful separation from service in January 1989. Delaying plaintiff's date for returning to active duty (thus exacerbating his gap in service), while denying his request for an AFIT assignment to account for the gap, was at best a material disservice to plaintiff.

Instead of authorizing an AFIT assignment, the 1991 AFBCMR recommended that:

"The pertinent military records of the Department of the Air Force relating to DAVID C. ROTH, be corrected to show that he was not discharged from all appointments on 31 January 1989, but on that date, he was ordered Permanent Change of Station (PCS) to *his home of record or home of selection,* whichever is applicable, pending further orders."

AR at 44, 45 (emphasis added).

Similar to *Yee,* "[t]his [action (or inaction by the AFBCMR) ] was in itself an additional injustice for it not only failed to eliminate the cause of plaintiff's complaint, but virtually insured continuation of the same problem." *Yee,* 206 Ct.Cl. at 396, 512 F.2d at 1386. Where the AFBCMR was advised that it was wholly and entirely within its power to *"grant thorough and fitting relief,"* and precedent for such relief existed and on the facts before it similar relief was warranted and justifiable, the AFBCMR's failure to effect such relief was a violation of its "abiding

---

25. *See* Record of Proceedings, Air Force Board For Correction of Military Records, Docket No. 89–00431, dated August 22, 1989 (documenting a case where an unjustly separated service member attended Washburn University School of Law during a 34–month period of separation, whereby upon reinstatement, *i.e., ex post facto,* an AF Form 475, AFIT Training Report, was placed in the service member's record accounting for his time of separation/matriculation). AR at 121–32.

26. "If the Air Force cannot let me stay until my Ph.D. is completed by December 1991, they should allow me to stay at least through May 1991, by which time I will have finished all my course work. I could then finish my qualification exams and dissertation in absentia." AR at 57.

moral sanction," and therefore arbitrary and capricious.

The AFBCMR's duty *to take steps to grant thorough and fitting relief* cannot subsist unfulfilled. Here, the AFBCMR had a clear opportunity to perform accordingly, but failed to do so. This court shall not likewise be remiss respecting its authority pursuant to 28 U.S.C. § 1491(a)(2), thus:

> "To provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records, and such orders may be issued to any appropriate official of the United States."

While the record does not indicate whether plaintiff completed the Ph.D. program and obtained his degree, but if he has, the AFBCMR shall close the 29–month gap in plaintiff's service record, from 1989 to 1991, with the issuance of an AFIT Training Report reflecting marks commiserate with Mr. Roth's academic performance at the Claremont Graduate School.

■ *Request (iii):* That "the indorsement level on the Officer Evaluation Reports (OERs) closing 27 March 1984, 28 January 1985, and 1 June 1985, be upgraded." AR at 61.

*AFBCMR's decision:*

> "We noted the supporting statements provided by the members of the applicant's rating chain on the OERs closing 27 March 1984, 28 January 1985, and 1 June 1985. However, these statements, while supportive of the applicant's request, did not persuade us that the evaluators were precluded from forwarding the contested reports for higher level indorsements or that the

reports are in error or unjust as rendered."

AR at 68.

The AFBCMR's decision cannot and should not overcome the weight of the record evidence that the Air Force has admitted that plaintiff's record warrants correction. Here, the AFBCMR has predicated its decision on a finding that "the evaluators were [not] *precluded from* forwarding the contested reports for higher level indorsements or that the reports are in error or unjust as rendered." The "precluded from" reasoning relied upon by the AFBCMR represents a standard not found in statute or regulation. When reviewing an administrative decision, we are not required to leave "common sense at the courthouse door." [27] Hence, since the raters were told (as the record supports, AR at 33–35,) to downgrade Mr. Roth's OER in 1984 by someone higher in the chain of command, then common sense tells us that that OER would not get forwarded up the chain of command for a higher indorsement.[28]

That the one lowered indorsement in 1984 led to the successive lower indorsements in January and June of 1985 is undisputed in the record. AR at 136–39. The chain of command admitted that the first 1984 lowered indorsement was due to the AFOSI ongoing investigation, which was in violation of AFR 36–10. AR at 136–40. Therefore, the March 1984, January and June 1985 OERs are in error and unjust as rendered since the record shows that the chain of command supplied statements attesting that absent such unlawful considerations, plaintiff was deserving and would have definitely received higher level indorsements. *Id.*

On these facts, where the Air Force admits that plaintiff's record warrants the requested correction and the AFBCMR denied such relief based upon a self-imposed "precluded from" standard, not supported in law, the AFBCMR's decision is arbitrary and capricious.

---

27. *See Brock v. City Oil Well Serv. Co.,* 795 F.2d 507, 510 (5th Cir.1986).

28. *See also* AR at 136–39 (reflecting signed statements by Mr. Roth's former chain of command attesting that "At that time, it was the practice at

9th Air Force Headquarters not to forward to the Command Section OERs of officers who recently had an OER marked down for less than exceptional performance.'').

■ *Request (iv):* That "Air Force Commendation Medals (AFCMs) coinciding with [Mr. Roth's] transfer from Shaw AFB and separation from Ramstein Air Base be accomplished and inserted in his record." AR at 61.

*AFBCMR's decision (a):*

"We also found no evidence that the members of applicant's chain of command were precluded from recommending him for an end of tour decoration when he departed Shaw AFB. Furthermore, as has been previously noted, traditionally, this Board is not in the business of creating fictitious records of duty performance or approving without recommendation an award for unspecified accomplishments."

AR at 68.

Again the AFBCMR applies its "precluded from" standard having no basis in law. The AFBCMR, as for an end of tour decoration for Shaw AFB, was advised by the Air Force not to grant plaintiff's request. Its reasoning therefor was that while plaintiff's former chain of command uniformly affirmed that plaintiff would have been recommended for the award, there was no statement in the record that the recommendation would have been approved. That standard (of the "but for" variety) is too high. To the extent feasible, the AFBCMR shall order the recommendations to go forth, *post hac,* and permit the appropriate approver(s) to determine whether an award should be issued.

*AFBCMR's decision (b):*

"Applicant's contention that there were 11 months of unrated service prior to his 31 January 1989 separation [from Ramstein AB] and that he did not receive a deserved decoration upon his separation are duly noted. However, the supporting statements from the members of the applicant's chain of command did not persuade us that a report was required. To the contrary, the rater indicated that he has no recollection of preparing one or electing not to prepare one and the only reason he would not have prepared an OER would be under circumstances where one was not required. In addition, although the supporting statements indicate that they are not sure why the applicant was not submitted for an end

of tour decoration and now support such a recommendation, no evidence has been presented showing that the individuals responsible for submitting a recommendation for a decoration were precluded from doing so at the time of his separation."

AR at 69.

■ Aside from the fact that the AFBCMR's "precluded from" reasoning is not recognized in law, it also fails to overcome defendant's admission that: (i) "The regulation in effect at the time required an evaluation [for the 11–month un-rated period]. [ (AFR 36–10 (August 1, 1988)) AR at 155.] If the Board chooses to deal with this on the merits, perhaps they could order that a form be placed in the record indicating no rating is available through no fault of the applicant" (AR at 64) and (ii) the decoration is warranted because plaintiff's former chain of command at Ramstein AB affirmed that they would have recommended and approved an end of tour decoration (AR at 65). The foregoing reflects a sufficient showing of error and injustice, therefore the AFBCMR's decision is arbitrary, capricious, and not substantiated in law or evidence.

*Request (v):* That "the prejudicial comments and notations on the AF Form 77 (Supplemental Evaluation Sheet) covering the period 8 March 1988 thru 26 June 1991, and on the OER closing 27 March 1984 be removed." AR at 61.

*AFBCMR's decision:*

"Applicant contends that the notation 'Corrected Copy' on the now corrected OER closing 27 March 1984 and the AF Form 77 covering the period 8 March 1988 through 26 June 1991 were prejudicial to his chances for fair and equitable promotion consideration. By regulation, an AF Form 77 is placed in an individual's record to document all unrated periods. In this case, the contested AF Form 77 accurately reflects the reason and the inclusive period in which the applicant was not rated due to his break in service. In addition, the notation on the corrected OER was made in accordance with the governing regulation in effect at the time. We found no evidence that the notation on

the corrected OER or the contested form were prepared contrary to the governing regulation, that they were improperly filed in the applicant's records, or that he was treated differently than other similarly-situated officers."

AR at 69.

As for the words "Corrected Copy" appearing on the alleged "corrected" March 1984 OER, the "governing regulation," to wit, AFR 31–11, relied upon by defendant provides at note 7: "Unless otherwise directed by the AFBCMR: a. Corrected reports will be annotated according to note 2, above." *See* AFR 31–11 (15 March 1990), Pl.App. at 12. In note 2 of AFR 31–11, the instructions for applying the words "Corrected Copy" are found. But clearly, pursuant to note 7, the AFBCMR has discretion respecting the language that may be used.

In a later decision, No. 98–01878, having similar facts involving an undue separation from service, the AFBCMR therein reached the following conclusion:

"While we normally would have agreed with the Air Force's arguments regarding the AF Form 77 comments and the 'Corrected Copy' annotations, the applicant's unjust separation from active duty constitutes a *mitigating factor warranting special intervention* .... The applicant's separation was directly caused by a superior's improper actions, the ripple effect of which may have resulted in his not receiving full and fair consideration by the CY97C MLR and promotion boards."

Record of Proceedings, Air Force Board For Correction of Military Records, Docket No. 98–01878, dated September 23, 1999 at 5 (emphasis added).

Here, in the case at bar, the sole reason that plaintiff's March 1984 OER required any *correction* at all was "directly caused by a superior's improper actions," when Mr. Roth's OER was downgraded in violation of AFR 36–10 on the basis of unfounded allegations of wrongdoing. The foregoing undis-

puted fact, taken as a whole with the other facts in this case, operates as a "mitigating factor warranting special intervention" whereby the AFBCMR must exercise its discretion, pursuant to AFR 31–11 note 7 *supra,* to ensure that the corrected record is innocuous.[29] Where the AFBCMR has failed to do so, it has fallen short of its primary mandate to "grant thorough and fitting relief." *Caddington,* 178 F.Supp. at 607.

Moreover, the explanatory language on plaintiff's AF Form 77 states:

"No report available for the period 8 Mar 88 through 26 Jun 91. Member restored to active duty by Direction of the Secretary of the Air Force under AFR 31–3, Air Force Board for the Correction of Military Records."

AR at 178.

Foremost is the fact that the time period of "8 March 1988 through 26 June 1991" erroneously captures the separate 11–month period, *i.e.,* March 8, 1988 to January 30, 1989, where Mr. Roth was in fact on active duty serving at Ramstein AB for which he received no evaluation report. Secondly, rather than "making it clear that [the 29–month] gap[ ][was] not caused by any fault on the part of plaintiff," *i.e.,* the unlawful separation period of January 31, 1989 through June 26, 1991, the language merely avers that plaintiff was *not* on active duty which alone is *prima facia* prejudicial. *See Yee,* 206 Ct.Cl. at 398–99, 512 F.2d at 1388. The AFBCMR, no doubt, has experience with providing language that would obviate such a prejudicial result, *e.g.,* the "Report for this period [is] not available for administrative reasons which were not the fault of the member," Pl.App. at 48, or words of similar import.

Notwithstanding, any specific correction here has already been satisfied by this court's direction *supra* that defendant (i) correct the 29–month gap with a Training Report from AFIT, (ii) issue a separate Form AF–77 for the 11–month gap using language

---

**29.** *See Sanders v. United States,* 594 F.2d 804, 814, 219 Ct.Cl. 285, 303 (1979) ("Regulations prescribe that OERs are to be objective and prepared in a certain way. If a particular officer's OER has not been so prepared and that defect *could have* resulted in his nonselection for promotion followed by discharge, this is legal and factual error and an injustice to the officer as well.") (emphasis added).

consistent with the Air Force's own recommendation, and (iii) apply discretionary language pursuant to note 7 of AFR 31–11 instead of "Corrected Copy" on plaintiff's "corrected" 1984 OER.

■ *Request (vi):* That "[Mr. Roth] be considered for promotion to the grade of major by the Special Selection Board (SSB) for the CY 87 Central Major Selection Board,[30] and for promotion to the grade of lieutenant colonel by SSB beginning with the CY93A Central Lieutenant Colonel Selection Board." AR at 61.

*AFBCMR's decision:*

"Applicant contends that the PRFs prepared for the CY93 and CY94 Lieutenant Colonel Boards were prepared on the basis of inaccurate and incomplete personnel records. In this regard, we note the statement provided by the senior rater who only indicated that the alleged errors may have impacted his decision as to whether the applicant would have received Definitely Promote recommendations and that there is no way to determine at this time whether this would have occurred. A review of the evidence presented did not convince us that the senior rater was unable to render a fair assessment of the applicant's promotion potential when considering whether or not to award him a Definitely Promote recommendation."

AR at 69.

The AFBCMR's decision cannot overcome the admission evidence by the Air Force that several corrections to plaintiff's record should occur, and that said corrected record should be submitted to two (2) SSBs for CY93 and CY94. Recall that the Air Force itself made the following findings: (1) an OER for the un-rated 11–month period of

March 8, 1988 through January 30, 1989 was required by regulation; (2) evidence in the record from plaintiff's former chains of command supported increased indorsement levels on his OERs for March 1984, January and June 1985; (3) sufficient evidence was provided from superior officers that an end of tour decoration from Ramstein AB should have been awarded in 1989; and (4) upon completion of the foregoing corrections to plaintiff's record, he should receive SSB promotion consideration for CYs 1993 and 1994. AR at 64–69.

Statement evidence in the record by higher-ranking officials in the Air Force shows [31] that the admitted areas warranting correction as well as those ordered by this court herein are indeed factors having a "substantial affect" on promotion decisions. Defendant emphasizes that one senior rater stated that the factors *may have* impacted his decision not to rate the plaintiff "Definitely Promote," but he could not make a determination at that time (obviously having no other comparison information before him). The mere fact that these factors "may have" impacted his decision is sufficient,[32] and the question is now ripe for SSBs to ultimately decide having all relevant information before them.

Therefore, the weight of the evidence supports a finding that the corrections discussed herein are warranted by law, and said finding belies the AFBCMR's assertion that "the evidence presented did not convince us that the senior rater was unable to render a fair assessment of the applicant's promotion potential." Here, again, the AFBCMR appears to be applying a "but for" standard, when a "substantial affect" is all that is required.[33]

---

30. Since the board did not address this portion of plaintiff's request, the court cannot review it.

31. *See* AR at 136–47.

32. *See Cunningham v. United States,* 39 Fed.Cl. 688, 694 (1998) (finding that an ambiguity in the record where the areas of concern "may have" contributed to plaintiff's failure of selection is construed against the defendant for failure to prove a lack substantial nexus between the error and the non-selections).

33. "It is well established that an officer seeking a correction of his record need not prove that 'but for' the errors, the non-selection would not have occurred, *i.e.,* he would or probably would have been promoted. [citations omitted] Rather, plaintiff must show by 'cogent and clearly convincing evidence,' [citation omitted] first, a material legal error or injustice, and second, a 'causal nexus' or 'substantial connection' between the error and the promotion rejection." *Cunningham,* 39 Fed. Cl. at 692 (citations omitted).

The holding in *Yee* is totally apposite here, as follows:

"Had the Air Force ... put in plaintiff's files an adequate explanation that his [11–month and 29–month] gap[s] in OERs had been caused by an injustice committed by the Air Force itself, ... there can be little doubt this court might well have reached a far different conclusion in the instant case. But without [at least that], we cannot agree with the AFBCMR when it said that plaintiff was given fair and just consideration for promotion by the [CY93] and [CY94] Selection Boards or that the absence of an adequate explanation in his files was [non-prejudicial]. For the foregoing reasons, we believe plaintiff could not have been given proper consideration by either Selection Board."

*Yee*, 206 Ct.Cl. at 396, 512 F.2d at 1386–87.

"[T]he law requires that another selection board be presented with a substantially complete and fair record" consistent with this opinion. *Porter*, 163 F.3d at 1311–12 (citing *Sanders*, 594 F.2d at 814, 219 Ct.Cl. at 302). Therefore, the AFBCMR's decision cannot be sustained on this record.

## V. CONCLUSION

Based upon all of the foregoing, the court hereby holds that the plaintiff is entitled to full and complete relief as delineated herein and as follows:

(1) Correction of the military records of Mr. Roth by: (i) upgrading indorsements on OERs for March 1984, January and June 1985, (ii) ordering that an end of tour decoration be awarded for plaintiff's service at Ramstein AB, (iii) ordering that the end of tour decoration recommendation(s) go forth for approval for plaintiff's service at Shaw AFB, (iv) ordering that a AF–Form 77 for the 11–month period, March 8, 1988 to January 30, 1989, for time served at Ramstein AB, be placed in plaintiff's record stating that "a report for this period is not available for administrative reasons which were not the fault of the service member," or language of similar effect, (v) ordering that an AFIT Training Report be generated for the 29–month period, January 1989 to July 1991, with marks commiserate with plaintiff's aca-demic performance at Claremont Graduate School, and (vi) causing the CY93 and CY94 promotion non-selections to be expunged; and

(2) Finally, the AFBCMR shall (i) reinstate plaintiff at the rank of major retroactive to July 1, 1995, (ii) order back pay and benefits at the appropriate rate from the involuntary discharge date to the date of reinstatement and continue such pay and allowances until properly discharged accordingly to law and regulation, and (iii) submit plaintiff's duly corrected record to applicable SSB(s) for further consideration.

The Clerk shall enter judgment accordingly. Costs to the plaintiff.

**IT IS SO ORDERED.**