David C. ROTH, Plaintiff–Appellee,

v.

UNITED STATES, Defendant–Appellant.

No. 03–5116.

United States Court of Appeals,
Federal Circuit.

Aug. 11, 2004.

Guy J. Ferrante, King & Everhard, P.C., of Springfield, VA, argued for plaintiff-appellee.

J. Reid Prouty, Attorney, National Courts Section, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, and Bryant G. Snee, Assistant Director.

Before MICHEL, CLEVENGER, and SCHALL, Circuit Judges.

SCHALL, Circuit Judge.

David C. Roth was given mandatory retirement from the United States Air Force at the rank of major, effective July 1, 1995, after twice having been nonselected for promotion to the rank of lieutenant colonel. This followed a mandatory discharge in 1989 for failure to be promoted to major and subsequent reinstatement and promotion to that rank after corrective action by the Air Force Board for Correction of Military Records ("Board"). Following an unsuccessful application to the Board after his second separation, Mr. Roth filed suit in the United States Court of Federal Claims on October 27, 2000. In his suit, he sought reinstatement to the rank of major as of July 1, 1995, back pay, benefits, and the correction of his military record.

On April 15, 2003, the Court of Federal Claims granted judgment in Mr. Roth's favor based on the administrative record. The court first ruled that Mr. Roth was entitled, through Board action, to various corrections of his military record. The corrections were (i) upgrading the indorsement levels on three of his officer effectiveness reports ("OERs"); (ii) removal of the notation "Corrected Copy" from his OER for the period ending March 27, 1984 ("March 1984 OER"); (iii) forwarding recommendations for approval of an end-of-tour decoration for his service at Shaw Air Force Base ("AFB"); (iv) awarding an end-of-tour decoration for his service at Ramstein AFB; (v) insertion of an Air Force ("AF") Form 77 in his record explaining the lack of an OER for the eleven months prior to his involuntary separation from the Air Force in January of 1989; and (vi) insertion of an AF Form 475, Training Report, to reflect Air Force Institute of Technology ("AFIT") sponsorship of his attendance at a graduate school program during the twenty-nine month period that began in February of 1989 during which he was involuntarily separated from the Air Force. After correcting Mr. Roth's record, the Court of Federal Claims voided his calendar year 1993 and 1994 nonselections for promotion to lieutenant colonel and directed the Board to reinstate him to active duty at the rank of major retroactive to July 1, 1995, with back pay and benefits. Finally, the court ordered the Board to send Mr. Roth's corrected record to Special Selection Boards ("SSBs") to determine whether, if Mr. Roth had gone before the 1993 and 1994 selection boards with his record as corrected, he would have been promoted to lieutenant colonel. *Roth v. United States*, 56 Fed. Cl. 239 (2003).

The government now appeals the decision of the Court of Federal Claims. It argues that the court exceeded its authority when it directed the Board to correct Mr. Roth's record. In the alternative, it urges, assuming record corrections were in order, the court erred in the further relief it granted. According to the government, the court simply should have directed that Mr. Roth's corrected record be referred to SSBs for a determination as to whether, if Mr. Roth had gone before the 1993 and 1994 lieutenant colonel selection boards with his record as corrected, he would have been promoted. The government contends that the court should not have voided Mr. Roth's two nonselections for promotion and ordered him retroactively reinstated to active duty.

For the reasons set forth below, we see no error in the decision of the Court of Federal Claims insofar as it (i) directed the upgrading of the indorsement levels on three of Mr. Roth's OERs; (ii) ordered the forwarding of recommendations for approval of an end-of-tour decoration for Mr. Roth's service at Shaw AFB; (iii) ordered that an end-of-tour decoration be awarded for Mr. Roth's service at Ramstein AFB; and (iv) ordered the insertion of an AF Form 77 explaining the lack of an OER for the eleven months prior to Mr. Roth's initial separation. We also see no error in the court's decision insofar as it ordered that SSBs be convened for the 1993 and 1994 lieutenant colonel selection boards. We agree with the government, however, that the Court of Federal Claims exceeded its authority in ordering the removal of the "Corrected Copy" notation on the March 1984 OER and in ordering that a Training Report be added to Mr. Roth's record reflecting AFIT sponsorship of a graduate course during his previous involuntary separation. Nevertheless, on the latter point, we do think that Mr. Roth is entitled to a nonprejudicial correction of his record to cover the gap in his service record from January 31, 1989, to June 27, 1991. We also agree with the government that the Court of Federal Claims erred in voiding

Mr. Roth's 1993 and 1994 nonselections for promotion to lieutenant colonel and in reinstating him to active duty at the rank of major with back pay and benefits, retroactive to July 1, 1995.

Thus, we affirm the decision of the Court of Federal Claims insofar as it directed record corrections (i)-(iv) above in the preceding paragraph. However, we modify the court's decision insofar as it ordered that a Training Report be added to Mr. Roth's record reflecting AFIT sponsorship during his involuntary separation. Finally, we reverse the court's decision insofar as it ordered the removal of the "Corrected Copy" notation on the March 1984 OER, voided Mr. Roth's 1993 and 1994 nonselections for promotion to lieutenant colonel, and ordered him retroactively reinstated to active duty at the rank of major with back pay and benefits. The case is remanded to the Court of Federal Claims with the instruction that the court, in turn, remand the case to the Board for further proceedings. In remanding the case to the Board, the court is to instruct the Board to make the four record corrections noted above and to correct Mr. Roth's record with respect to the gap in service between January 31, 1989, and June 27, 1991. The court also is to instruct the Board to convene SSBs for the 1993 and 1994 lieutenant colonel selection boards to consider Mr. Roth for promotion to lieutenant colonel in light of the corrections that will have been made in his record. In sum, we affirm-in-part, modify-in-part, reverse-in-part, and remand with instructions.

## BACKGROUND

### I.

Mr. Roth was commissioned a second lieutenant in the Air Force Reserve on June 10, 1977. By December 31, 1977, he had attained extended active duty status. Soon thereafter, he became Regular Air Force and was promoted to the rank of captain. In June 1982, he assumed duties at Shaw AFB, South Carolina, as Intermediate Command (Ninth Air Force) Inspector General Air Intelligence Inspector. On each of his OERs, including the one ending June 20, 1983 ("June 1983 OER"), he received impeccable performance ratings. In addition, each of his OERs was indorsed by a brigadier general.[1] *Roth*, 56 Fed. Cl. at 242.

Between June 1983 and March 1984, Mr. Roth was investigated by the Air Force Office of Special Investigations

---

**1.** Air Force Regulation 36–10 (Nov.1982) ("AFR 36–10") details the process by which officers are rated through the use of OERs. Each officer's performance is evaluated by a "rater," who is "[u]sually ... the officer's immediate supervisor"; an additional rater, "[u]sually the rater's rater"; and an "indorser," by default the additional rater's rater and the final evaluator on an OER. AFR 36–10, ¶¶ 2–22(a), 2–2(a), 2–10, tbl. 4–4. The indorser, however, is permitted to defer to a person higher in the rating chain if desired, in which case the person deferred to becomes the indorser. *Id.* ¶ 2–10. AFR 36–10 explains that the rating chain is generally the same as the chain of supervision for the officer, but commanders do have latitude in determining how the rating chain will be structured. *Id.* ¶ 2–23(a). Thus, "[t]his flexibility provides a further opportunity to achieve differentiation and recognizes that both level of indorsement and indorser grade have an impact on those who use the OER." *Id.; see also Small v. United States*, 158 F.3d 576, 579, 581–82 (Fed.Cir.1998) (discussing AFR 36–10 generally and addressing the "substantial measure of discretion" afforded commanders in structuring the rating chain). Mr. Roth contends that the rank and position of the indorser on an OER can determine whether an officer is promoted. *See Lindsay v. United States*, 295 F.3d 1252, 1255 (Fed.Cir.2002) ("According to Lindsay, the level at which an OER was indorsed was a critical marker of an OER's favorability, and an OER indorsed at a low level was a clear 'do not promote signal' to subsequent selection boards.").

("AFOSI") as a result of allegations of personal wrongdoing. *Id.* Based solely upon the fact of these allegations, Mr. Roth received an unfavorable mark on his March 1984 OER, covering the period June 21, 1983, to March 27, 1984. On Item 9 of the Professional Qualities category, which queried whether "[o]ff duty personal problems detracted from an otherwise excellent professional image," he received a "Meets Standard" rating. *Id.* In addition, the indorsement on his March 1984 OER was from the Ninth Air Force Inspector General (a colonel), rather than from the Ninth Air Force Vice Commander (a brigadier general), which had been the case previously.

The AFOSI investigation closed on July 6, 1984, after the issuance of the March 1984 OER, and Mr. Roth was ultimately absolved of all charges of wrongdoing. His two subsequent OERs, for the periods covering March 28, 1984, to January 28, 1985 ("January 1985 OER"), and January 29, 1985, to June 1, 1985 ("June 1985 OER"), nevertheless reflected the same lowered indorsement level of only colonels, one serving as Ninth Air Force Inspector General and the other as Ninth Air Force Deputy Chief of Staff for Intelligence. In the summer of 1985, Mr. Roth was given a permanent change of station to Homestead AFB, but he did not receive any decorations recognizing his three years of service at Shaw AFB. In July 1987, he was transferred to Ramstein AFB, Germany.

Mr. Roth was passed over for promotion to the rank of major on September 28, 1987, and again on June 6, 1988. As a result, he was involuntarily separated from the Air Force with an honorable discharge on January 31, 1989.[2] *Roth,* 56 Fed. Cl. at 242, 243 n. 2. Upon his separation, he received neither a decoration nor an OER for his eleven months of service at Ramstein AFB.

In March 1989, Mr. Roth applied to the Board for relief. In his application, he requested (i) that Item 9 on his March 1984 OER be upgraded to "Well Above Standard"; (ii) that he be reconsidered for promotion by an SSB; and (iii) that if selected by an SSB, he be reinstated to active duty. *In the Matter of Roth,* No. 89–01387, slip op. at 1 (A.F.B.C.M.R. Oct. 31, 1989). On October 31, 1989, the Board recommended upgrading Item 9 of the March 1984 OER to "Well Above Standard" and replacing the previous comments on his March 1984 OER with the comment "Behavior and bearing were exemplary." *Id.* at 3. The Board also convened two SSBs, which met on May 7, 1990, to reconsider Mr. Roth's promotion to major for the calendar years 1987 and 1988, based on the corrected March 1984 OER. *Id.; Roth,* 56 Fed. Cl. at 242–43. Although the SSB for calendar year 1987 did not recommend his promotion, the SSB for calendar year 1988 concluded that Mr. Roth would have been promoted to major by the original selection board on the basis of his corrected March 1984 OER. *Roth,* 56 Fed. Cl. at 242–43.

In a formal request to return to active duty on June 16, 1990, Mr. Roth informed the Air Force that after his involuntary separation, he had enrolled in an advanced degree program at the Claremont Graduate School in Claremont, California, where he was working toward a Ph.D. in International Political Economy. *Id.* at 243. He asked that he be allowed to complete the program, perhaps under sponsorship by AFIT, so that a nonprejudicial explanation for his absence from active duty could be

---

**2.** A captain or major of the Regular Air Force who fails selection for promotion to the next higher grade for the second time and whose name does not appear on a list of officers recommended for promotion to the next higher grade is either discharged or, if he is eligible for retirement, involuntarily retired. 10 U.S.C. § 632 (2000).

placed in his record. *Id.* Mr. Roth took his request to the Board, which sought the opinion of the Air Force Military Personnel Center ("AFMPC"). *In the Matter of Roth,* No. 89–01387, slip op. at 2 (A.F.B.C.M.R. Jan. 30, 1991). The AFMPC indicated that AFIT does not itself sponsor students, and that both the Air Force Academy and Air Force Intelligence (Mr. Roth's last duty station) declined to sponsor Mr. Roth for the AFIT program. *Id.* Based on the AFMPC's further explanation that no graduate education quota in Mr. Roth's degree area had been established by the Air Force for fiscal year 1991, the Board refused to provide Mr. Roth with AFIT sponsorship. *Id.*

The Board did decide, however, that Mr. Roth should be reinstated as a result of the SSB decision for calendar year 1988. The Board further determined that his record should be corrected for the twenty-nine month period from January 31, 1989, to June 26, 1991, during which he was separated, to show that "he was not discharged from all appointments on 31 January 1989 but on that date, he was ordered Permanent Change of Station (PCS) to his home ...." *Id.* On June 27, 1991, Mr. Roth was returned to active duty at the rank of major, retroactive to January 31, 1989. *Roth,* 56 Fed. Cl. at 243.

## II.

Upon his return to active duty, Mr. Roth was assigned to the Defense Intelligence Agency in a Joint Staff assignment at the Department of Defense. By the time the lieutenant colonel selection board met in October 1993, Mr. Roth had received only three OERs since his return to active duty, *see In the Matter of Roth,* No. 89–01387,

slip op. at 3 (A.F.B.C.M.R. June 2, 1999), whereas other candidates with competing service generally had received five or six. *Roth,* 56 Fed. Cl. at 243 n. 8. Mr. Roth was passed over for promotion to lieutenant colonel. After a subsequent passover in 1994, he was given mandatory retirement from active duty effective July 1, 1995.[3] *Id.* at 243 & n. 8.

On August 29, 1995, Mr. Roth submitted to the Board a Request for Reconsideration. He asked, *inter alia,* that his records be corrected to reflect direct promotion to lieutenant colonel as if he had been selected by the October 1993 selection board. Mr. Roth asserted that he was denied "fair and equitable consideration" for promotion to lieutenant colonel in 1993 and 1994 because his record was not "substantially complete." Mr. Roth argued that as a result of omissions that could be traced directly to his then-corrected March 1984 OER and his erroneous separation in 1989, his record included the following errors:

> 11 unrated months prior to his 1989 separation; 2½ unrated years between his erroneous 1989 separation and 1991 reinstatement; misleading, inaccurate, and improperly reduced indorsement levels on OERs closing 27 March 1984, 28 January 1985, and 1 June 1985; lack of deserved decorations upon transfer from Shaw AFB in 1987 and Ramstein Air Base in 1989; direct reference to restoration to active duty by [Board] action on AF Form 77; "Corrected copy" reference on 27 March 1984 OER; and PRFs for CY93 and CY94 lieutenant colonel promotion boards prepared on basis of inaccurate and incomplete personnel record.[4]

---

3. *See* 10 U.S.C. § 632, *supra,* note 2.

4. During the relevant time period, an AF Form 77 was used, *inter alia,* as a substitute for a missing report and to cover gaps in

performance records. AFR 36–10, ¶ 6–1(a), (b). A Promotion Recommendation Form ("PRF") was prepared by an officer's senior rater to assist promotion boards in determining those officers best qualified. AFR 36–10,

Mr. Roth urged that "a directed promotion to the grade of lieutenant colonel would be the most appropriate way to remove the 'consequences' of [his] flawed 1984 OER once and for all."

On the merits of Mr. Roth's claims, the AFMPC recommended that the Board: (i) order the March 1984 and January and June 1985 OERs reaccomplished with upgraded indorsements; (ii) deny the request to remove the "Corrected Copy" notation from the corrected March 1984 OER; (iii) deny the request for an end-of-tour decoration from Shaw AFB; (iv) award an end-of-tour decoration from Ramstein AFB; (v) place a form in Mr. Roth's record indicating that no rating was available for the last eleven months of active duty prior to his separation in 1989 "through no fault of the applicant"; (vi) deny the request for an AFIT Training Report for the twenty-nine months of Mr. Roth's involuntary separation; (vii) deny the request to alter the language on his July 1991 AF Form 77; (viii) deny any correction to the PRFs for the 1993 and 1994 selection boards; (ix) deny Mr. Roth direct promotion to lieutenant colonel; and (x) should the Board make the recommended corrections, send Mr. Roth's record to an SSB for consideration for promotion to lieutenant colonel. Memorandum from the AFMPC to the Board at 4–7 (Oct. 1, 1996).

Despite the AFMPC's admission of certain errors in Mr. Roth's record, on June 2, 1999, the Board denied Mr. Roth's Request for Reconsideration for failure to "demonstrate the existence of probable material error or injustice ...." *In the Matter of Roth,* slip op. at 10 (June 2, 1999). Specifically addressing

Mr. Roth's request for direct promotion to lieutenant colonel, the Board found no evidence that Mr. Roth's record was "so inaccurate or misleading that the members of the duly constituted selection board ... were precluded from rendering a reasonable decision concerning his promotability in comparison to his peers." *Id.* at 8. With regard to his requested record corrections, the Board found "insufficient relevant evidence ... to demonstrate the existence of probable error or injustice warranting corrective action." *Id.*

### III.

On October 27, 2000, Mr. Roth filed suit in the Court of Federal Claims. In his complaint, he asserted (i) that the Board's June 2, 1999 decision was arbitrary, capricious, and contrary to law; (ii) that he was entitled to promotion consideration on a fair and equitable basis; (iii) that his 1993 and 1994 nonselections for promotion to lieutenant colonel were unlawful because they were based on a record that did not reflect his career on a fair and equitable basis; (iv) that he was therefore entitled to active duty pay, allowances, and other benefits at the rank of major from his unlawful mandatory retirement on July 1, 1995; and (v) that he also was entitled to have deleted from his record the 1993 and 1994 nonselections for promotion and his mandatory retirement, and to have his record modified to reflect continuous active duty service. *Roth,* 56 Fed. Cl. at 244.

In response, the government filed a motion to dismiss or, in the alternative, a motion for judgment on the administrative

¶ 1–8(a)(2) (Aug. 1, 1988). The senior rater has three choices on a PRF: Definitely Promote, Promote, Do Not Promote. *Id.* ¶ 4–5(a). A Definitely Promote recommendation is the highest recommendation that can be given by a senior rater on a PRF, and the number of "Definitely Promotes" that a senior rater can assign in any given period is strictly limited. *Id.; see Haselrig v. United States,* 53 Fed. Cl. 111, 116 (2002), *aff'd,* 333 F.3d 1354 (Fed.Cir.2003).

record. Mr. Roth responded by filing a cross-motion for judgment on the administrative record. The court ruled on those cross-motions on April 15, 2003.

In its decision, the court addressed in turn each of Mr. Roth's requests for relief. *Id.* at 246. The court determined that the Board's refusal to upgrade the indorsement levels on Mr. Roth's March 1984 and January and June 1985 OERs, despite the fact that the AFMPC admitted that Mr. Roth's record warranted the corrections, was arbitrary and capricious. *Id.* at 251. According to the court, the Board's self-imposed standard that Mr. Roth's "evaluators were [not] *precluded from* forwarding the contested reports for higher level indorsements" was not supported in law. *Id.* (emphasis added by the court). In addition, the court was persuaded by explanations from former members of Mr. Roth's chain of command that had it not been for the pending AFOSI investigation, Mr. Roth would have received higher-level indorsements on the OERs. *Id.* The court thus ordered the indorsements on the three OERs to be upgraded.

The court also ordered the Board to remove the notation "Corrected Copy" from Mr. Roth's corrected March 1984 OER and to apply discretionary language, pursuant to note 7 of AFR 31–11, table 4, that would be innocuous as far as Mr. Roth's prospects for promotion were concerned. *Id.*

The court determined that the Board's decision with respect to end-of-tour decorations from Shaw and Ramstein AFBs was arbitrary and capricious as well. *Id.* at 252. Again, the court concluded that the Board's rationale, that there was "no evidence that the members of [Mr. Roth's] chain of command were *precluded from* recommending him for an end of tour decoration when he departed Shaw AFB," had no basis in law. *Id.* (emphasis added by the court). Thus, the court ordered the

Board to forward the recommendations for the Shaw AFB decoration for determination whether the award should be issued. *Id.* For the same reason, and also because the AFMPC admitted it was warranted, the court ordered the Board to award Mr. Roth an end-of-tour decoration for his service at Ramstein AFB. *Id.*

The court also ordered the Board to issue an AF Form 77 for the eleven-month period from March 8, 1988, to January 30, 1989, with language, consistent with the AFMPC's recommendation, that no report was available for reasons that were not the fault of Mr. Roth. *Id.* at 253–54.

The court determined that the Board's refusal of AFIT sponsorship for Mr. Roth's graduate studies constituted a failure to fulfill its duty to take steps to grant thorough and fitting relief. *Id.* at 250, 251 (citing *Caddington v. United States,* 147 Ct.Cl. 629, 634, 178 F.Supp. 604 (1959)). The court thus ordered the Board to add to Mr. Roth's record an AFIT Training Report for the twenty-nine month period from January 31, 1989, to June 26, 1991, reflecting marks commensurate with his academic performance at the Claremont Graduate School, the institution which he had attended. *Id.* at 251.

The court concluded that the Board's decision not to grant Mr. Roth's request for promotion to lieutenant colonel was arbitrary and capricious, and "in clear violation of operative statutory and case law ...." *Id.* at 248. According to the court, the Board applied a legal standard with no basis in law when it decided that Mr. Roth's *"records were not so inaccurate or misleading"* that the selection board was *"precluded from* rendering a reasonable decision concerning his promotability in comparison to his peers." *Id.* (emphases added by the court). The court recognized, however, that the ultimate decision to promote Mr. Roth lay solely with the

military. *Id.* at 249. It therefore did not order the Board to promote him but rather ordered the Board to submit his corrected record to SSBs for the 1993 and 1994 selection boards. *Id.* at 255.

Finally, the Court of Federal Claims voided Mr. Roth's 1993 and 1994 nonselections for promotion to lieutenant colonel and ordered that he be reinstated at the rank of major retroactive to July 1, 1995, with back pay and benefits. *Id.* The government appeals the Court of Federal Claims' decision. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

## ANALYSIS

### I.

■ The Court of Federal Claims reviews a Board decision to determine if it is arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Heisig v. United States,* 719 F.2d 1153, 1156 (Fed.Cir.1983). In this case, the court granted summary judgment on the administrative record based on the absence of genuine issues of material fact. Fed. Cl. R. 56(c), 56.1; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

We review legal determinations of the Court of Federal Claims, such as a judgment on the administrative record, *de novo.* *Heisig,* 719 F.2d at 1158. We therefore apply the same standard of review: we will not disturb the Board's decision unless we find it to be arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *See Haselrig v. United States,* 333 F.3d 1354, 1355 (Fed. Cir.2003). As the Court of Federal Claims recognized, the pertinent facts in this case are not in dispute. Accordingly, we need only decide whether the court erred as a matter of law in the several rulings that the government challenges on appeal. We begin with the legal framework for the issues raised by the government.

### II.

■ When a military officer is involuntarily separated from active duty, or mandatorily retired, for twice failing to be selected for promotion, he may apply for relief, pursuant to 10 U.S.C. § 1552(a), to the appropriate board for the correction of military records. The correction board is a civilian board, through which the Secretary of a military department "may correct any military record ... when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1) (2000). The Secretary is obligated not only to properly determine the nature of any error or injustice, but also to take "such corrective action as will appropriately and fully erase such error or compensate such injustice." *Caddington,* 147 Ct.Cl. at 632, 178 F.Supp. 604.

■ In carrying out its function, the correction board must determine "whether the applicant has demonstrated the existence of a material error or injustice that can be remedied effectively through correction of the applicant's military record and, if so, what corrections are needed to provide full and effective relief." 32 C.F.R. § 865.4(*l*)(4) (1999). Indeed, "when a correction board fails to correct an injustice clearly presented in the record before it, it is acting in violation of its mandate." *Yee v. United States,* 206 Ct. Cl. 388, 512 F.2d 1383, 1387 (1975). Our predecessor court elaborated upon this obligation of the Board: "[T]he Secretary and his boards have an abiding moral sanction to determine, insofar as possible, the true nature of an alleged injustice and to take steps to grant thorough and fitting relief." *Caddington,* 147 Ct.Cl. at 634, 178 F.Supp. 604.

■ Turning to the matter of promotion, the fundamental rule is that documents that are sent to a selection board must be "substantially complete, and must

fairly portray the officer's record." *Weiss v. United States,* 187 Ct.Cl. 1, 408 F.2d 416, 419 (1969). If an officer's record contains prejudicial information, or lacks pertinent documents that may have mitigated the adverse impact of the prejudicial information, the record is not complete, and the law requires that another selection board be presented with a substantially complete and fair record. *Porter v. United States,* 163 F.3d 1304, 1311–12 (Fed.Cir.1998) (citing *Weiss,* 408 F.2d at 419; *Sanders v. United States,* 219 Ct.Cl. 285, 594 F.2d 804, 814 (Ct.Cl.1979)).

█ We explained in *Porter* that section 1552 does not limit the kind of military record subject to correction by a correction board; hence, a correction board may entertain any kind of application for correction. 163 F.3d at 1311. The application may request corrections ranging from changing the terms of a discharge, or the citation of awards received, to amending records that include OERs, passover decisions by selection boards or SSBs, and discharge orders. *Id.*

Before a correction board, an officer has the burden of presenting "sufficient evidence of probable material error or injustice." 32 C.F.R. § 865.4(a). Faced with an application for the correction of an officer's records, a correction board has multiple options. First, it may deny the application, at which point, in all cases but one,

the board acts for the Secretary and its decision is final.[5] *Id.* § 865.4(p)(1).

The correction board also may grant any application in whole or in part, and if the relief was "recommended by the official preparing the advisory opinion, was unanimously agreed to by the panel, and does not involve an appointment or promotion requiring confirmation by the Senate,"[6] the board's decision is final. *Id.* § 865.4(p)(2). If the board's decision to grant an application in whole or in part is not final pursuant to section 865.4(p)(2), it forwards the record of the proceedings to the Secretary for a final decision. *Id.* § 865.4(q).

Should a correction board decide to grant corrections to an officer's record, it may choose to convene an SSB under the provisions of 10 U.S.C. § 628(b) (2000), which was enacted as part of the Defense Officer Personnel Management Act ("DOPMA").[7] Section 628(b) provides that in the case of an officer who was previously considered for promotion but was not selected, "the Secretary … *may convene* a special selection board [SSB]" if the Secretary determines either that

(A) the action of the board which considered the officer was contrary to law or involved material error of fact or material administrative error; or

---

5. The Board's decision is not final when it denies applications to correct records based on allegations of whistleblowing conduct protected by 10 U.S.C. § 1034 (2000). 32 C.F.R. § 865.4(p).

6. The Senate must confirm promotions to the grade of major or above. 10 U.S.C. § 624(c) (2000) ("Appointments under this section shall be made by the President, by and with the advice and consent of the Senate, except that appointments under this section in the grade of first lieutenant or captain or lieutenant (junior grade) or lieutenant shall be made by the President alone.").

7. Section 628 was substantially amended in 2001, 107 Pub.L. No. 107, § 503(b), 115 Stat. 1012, 1084 (2001) (codified as amended at 10 U.S.C. § 628), but those amendments explicitly preclude their application to any action, such as Mr. Roth's, commenced in a court of the United States prior to their enactment on December 28, 2001. *Id.* § 503(c)(2), 115 Stat. at 1085. For a detailed discussion of the procedures governing the operation of SSBs, see *Haselrig,* 53 Fed.Cl. 111.

(B) the board did not have before it for its consideration material information.

*Id.* § 628(b)(1) (emphasis added). By the language of the statute, if a correction board corrects an officer's record, but does not find (i) that the original selection board decision was contrary to law or involved material error of fact or material administrative error, or (ii) that the original selection board lacked material information for its consideration, it may alternately choose not to convene an SSB, despite any corrections it ordered in the officer's record. *See Porter,* 163 F.3d at 1315 ("The Air Force regulations for SSBs have thus consistently stated that access to an SSB occurs when the Secretary, or his or her designee, determines that a 'material error of fact' was 'involved' in the previous pass-over decisions."); *id.* at 1324 ("Under section 628, a passed-over officer ... has access to an SSB on a showing of 'material error.' ").

■ In the alternative, when a correction board determines that the initial selection board's decision did contain "material error of fact or material administrative error," the proper course is for the board to refer the corrected record to an SSB for a determination whether the officer would have been promoted had the initial selection board had the corrected records before it. *Id.* at 1324; *Richey v. United States,* 322 F.3d 1317, 1324 (Fed.Cir.2003).

■ The SSB will compare the officer's corrected record to a sampling of the records of those officers of the same competitive category who were recommended for promotion, and those officers who were not recommended for promotion, by the board that originally considered the officer. 10 U.S.C. § 628(b)(2). If the SSB decides the officer would have been promoted based upon his or her corrected records, the Secretary is bound by that decision. *Porter,* 163 F.3d at 1322. The consequences of this selection then relate back to the date of the selection board that passed over the officer, for which the SSB is the substitute: the officer receives the same position on the active duty list with the requisite pay and benefits that accrue to the rank to which he or she is promoted as a result of the SSB decision. 10 U.S.C. § 628(d)(2); *Porter,* 163 F.3d at 1315.

■ If, on the other hand, the SSB decides that the officer would not have been promoted, the officer incurs no additional failure of selection for promotion, 10 U.S.C. § 628(b)(3), and the officer may then bring to the correction board any complaints he or she may have concerning the process and decision of the SSB. *Porter,* 163 F.3d at 1322. By first sending the officer to an SSB to determine whether he or she would have been selected for promotion, rather than exercising its own discretion to select the officer, the correction board "is authorized and obligated to review the actions of the SSB on application from the officer...." *Id.* at 1323. As we explained in *Porter,* "the [board] must be able to act in the event material errors of a procedural, factual, or compositional nature infect the SSB deliberations." *Id.* The ultimate responsibility lies with the board to assure that an SSB produces "a reasonable determination of the officer's promotion prospects," which is the focus of the board's inquiry under section 1552 upon an appeal by the officer of the SSB's decision. *Id.* at 1325. Thus, the correction board is obligated to recommend to the Secretary voidance of an SSB decision when it concludes that the process of presenting the corrected records to the SSB did not yield a "reasonable determination that the officer would have been denied promotion initially even with an untainted record ...." *Id.*

■ An officer may obtain review of an adverse decision of a correction board in the Court of Federal Claims, provided that

the court has jurisdiction in the case pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1).[8] The Tucker Act authorizes certain actions for monetary relief against the United States to be brought in the Court of Federal Claims. For actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions, the Tucker Act waives the sovereign immunity of the United States. 28 U.S.C. § 1491(a)(1) (2000); *United States v. Mitchell*, 463 U.S. 206, 212–16, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Because the Tucker Act itself does not provide a substantive cause of action, however, a plaintiff must find elsewhere a money-mandating source upon which to base a suit. *Mitchell*, 463 U.S. at 216–19, 103 S.Ct. 2961; *Testan*, 424 U.S. at 398, 96 S.Ct. 948; *Collins v. United States*, 67 F.3d 284, 286 (Fed.Cir.1995).

■ In the context of involuntary separation cases, such as this one, the applicable money-mandating source is the Military Pay Act, 37 U.S.C. § 204 (2000). *See, e.g., Martinez v. United States*, 333 F.3d 1295, 1303 (Fed.Cir.2003) (en banc); *Adkins v. United States*, 68 F.3d 1317, 1321 (Fed.Cir.1995); *Sanders*, 594 F.2d at 810. In order to bring such a case in the Court of Federal Claims, the plaintiff must allege that because the separation was unlawful, he or she is entitled to the pay that would have been received but for the unlawful action. *See Martinez*, 333 F.3d at 1303. Moreover, although the Court of Federal Claims does not possess general equity jurisdiction, under the Tucker Act, in actions for monetary relief, "[t]o provide an entire remedy and to complete the relief afforded by the judgment, the court may, as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records ...." 28 U.S.C. § 1491(a)(2). Finally, an involuntarily discharged or mandatorily retired officer must bring his or her Tucker Act action in the Court of Federal Claims within six years of the date of discharge or retirement. *See id.* § 2501.

### III.

#### A. *Justiciability*

The government challenges neither the Court of Federal Claims' exercise of jurisdiction over Mr. Roth's complaint nor the court's order to add to his record an AF Form 77 explaining that the absence of an OER for the period March 8, 1988, to January 31, 1989, was not his fault. The government does, however, challenge the justiciability of the remaining corrections ordered by the court.[9] According to the

---

8. Generally, a correction board decision will come before the Court of Federal Claims in one of two circumstances: either an officer will have applied to the correction board, been denied relief, and then will have filed suit under the Tucker Act, *see Haselrig*, 333 F.3d at 1355, or the officer will have filed suit under the Tucker Act before proceeding to a correction board for relief, *see Richey*, 322 F.3d at 1323. In the latter circumstance, the court typically will require the officer to proceed to the Board and will retain jurisdiction while that happens. *Id.*

9. As noted above, the remaining record corrections ordered by the Court of Federal Claims were upgrading the indorsement levels on three of Mr. Roth's OERs; removal of the "Corrected Copy" notation from his March 1984 OER; forwarding recommendations for approval of an end-of-tour decoration for his service at Shaw AFB; ordering the award of an end-of-tour decoration for his service at Ramstein AFB; and insertion of an AF Form 475, Training Report, to reflect AFIT sponsorship of his graduate school program during his involuntary separation.

government, those corrections present nonjusticiable issues of military discretion because there are no statutory or regulatory guidelines against which the decisions of the military may be measured.

■ Even if a court possesses jurisdiction to hear a claim, when that claim presents a nonjusticiable controversy, the court may nevertheless be prevented from asserting its jurisdiction. We have explained that a controversy is justiciable "only if it is 'one which the courts can finally and effectively decide, under tests and standards which they can soundly administer within their special field of competence.'" *Voge v. United States,* 844 F.2d 776, 780 (Fed.Cir.1988) (quoting *Greene v. McElroy,* 254 F.2d 944, 953 (D.C.Cir. 1958)). In the military arena, because of the admonition against court interference with military matters, *see Orloff v. Willoughby,* 345 U.S. 83, 94, 73 S.Ct. 534, 97 L.Ed. 842 (1953), justiciability is an especially appropriate inquiry. *Adkins,* 68 F.3d at 1322 (quoting *Murphy v. United States,* 993 F.2d 871, 872 (Fed.Cir.1993)). As it is an issue of law, this court decides *de novo* whether a claim is justiciable. *Id.*

■ We have held that the merits of a service Secretary's decision regarding military affairs are beyond the ken of judicial review. *Id.* Not all claims arising from military decisions, however, present nonjusticiable controversies: "This court has consistently recognized that, although the *merits* of a decision committed wholly to the discretion of the military are not subject to judicial review, a challenge to the particular *procedure* followed in rendering a military decision may present a justiciable controversy." *Id.* (emphasis in original). We spelled out in *Murphy* that a court may in fact decide whether the military followed its own procedures,

which by their nature limit the military's discretion. 993 F.2d at 873. Accordingly, in cases in which procedural violations are alleged, "the test or standards against which this court measures the military's conduct are inherent: they are the applicable statutes and regulations." *Adkins,* 68 F.3d at 1323. To engage in such an inquiry does not intrude upon any discretion reserved exclusively for the military; rather, the inquiry merely ascertains whether applicable military procedures, statutory or regulatory, were followed. We have therefore determined that questions of procedural compliance are justiciable.

The government argues that if a regulatory or statutory standard does not govern a particular military action, the action is not justiciable. In this case, according to the government, all but one of the corrections ordered by the Court of Federal Claims [10] were based not upon the Air Force's failure to comply with regulation, but upon "facially discretionary acts" by Air Force officers and the Board. The government thus contends that the Court of Federal Claims exceeded its authority by intruding into the military province. For example, the government asserts that the trial court cited no regulatory guidance governing the level at which Mr. Roth's OERs should have been indorsed. The issue was therefore nonjusticiable, and the trial court was without the authority to order the indorsement levels raised on the March 1984 and January and June 1985 OERs.

Mr. Roth responds that the errors in his record arose from improperly executed military decisions, and that the mere presence of discretion in a military decision does not render that decision nonjusticiable *per se.* Mr. Roth explains that, con-

---

**10.** As noted above, the government does not challenge the insertion of an AF Form 77 explaining the absence of an OER for the

eleven months prior to Mr. Roth's separation from the Air Force in 1989.

trary to the government's contentions, the Court of Federal Claims was not being asked to make substantive decisions for the military. Mr. Roth asks us to recognize that the actions of the military in his case were improperly undertaken when measured against the regulations that governed them.

Pursuant to AFR 36–89, paragraph 1 (Apr.1992), an officer is entitled to "fair and equitable" promotion consideration, and Mr. Roth contends that this court has recognized the justiciability of this standard in its assessment of the propriety of records with which officers compete for promotion. *See Sargisson v. United States*, 913 F.2d 918, 922 (Fed.Cir.1990) (explaining that the Court of Claims reviewed the actions of selection boards for compliance with the requirement of 10 U.S.C. § 8442(c) (1976) (repealed 1980) that the record presented to a selection board portray an officer's career in a "fair and equitable" manner). Mr. Roth asserts that the events leading to his allegedly unlawful discharge began with the improper downgrading of his March 1984 OER. He argues that the failure of the Board to correct his records prevented his receiving "fair and equitable" consideration. His claim, he argues, is therefore justiciable.

 With two exceptions, we think that the record corrections ordered by the Court of Federal Claims do not run afoul of the rules of justiciability as they pertain to military decisions. We agree with the government that in order for an officer's claim to the correction of his record to be justiciable, there must exist standards by which a court can review the military decisions at issue. *See Adkins*, 68 F.3d at 1323. What we think the government fails to recognize, however, is that a normally nonjusticiable decision is not insulated from judicial review if it flows directly from the breach of a statute or regulation. Once a breach has been established, the

obligation falls to the Board, or if necessary to the court, to "take steps to grant thorough and fitting relief. . . ." *Caddington*, 147 Ct.Cl. at 634, 178 F.Supp. 604.

 For example, the government is correct that there is no explicit regulation governing the level at which an officer's OER should be indorsed. However, as we discuss in Part III.C below, the lowered indorsement levels on Mr. Roth's March 1984 and January and June 1985 OERs occurred as a direct result of the violation of AFR 36–10 on his March 1984 OER. Therefore, the decision to lower the indorsement levels on three of Mr. Roth's OERs is not insulated from judicial review merely because no regulation explicitly sets forth guidelines for the indorsement levels on officer OERs. The fact that the decisions to lower the indorsements flowed directly from the violation of a related regulation provides sufficient basis for the court to undertake judicial review.

### B. *Downgraded March 1984 OER*

Paragraph 3–14 of AFR 36–10 states that certain material is inappropriate and "must not be considered in the evaluation process or included in comments in evaluation reports or indorsements to them." Among the matters prohibited from consideration in the preparation of an OER are "[c]harges preferred, investigations, reviews by boards of evaluation or inquiry . . . that are not complete as of the close-out date . . . ." AFR 36–10, ¶ 3–14(a). Mr. Roth presented unrebutted evidence to the Board that the rating under Item 9 of the Professional Qualities category on his March 1984 OER was lowered as a result of the AFOSI investigation, which was not completed until July 6, 1984, despite the fact that he was ultimately absolved of all allegations against him.

In his initial appeal to the Board in 1989, Mr. Roth presented statements signed by

all three of the raters on his March 1984 OER that their decision to downgrade Item 9 was the result of the AFOSI investigation, the AFOSI interviews of Mr. Roth's coworkers, and the existence of allegations and rumors concerning his behavior. Colonels William Coward, Dieter Satz, and David Sawyer each averred that Mr. Roth's "evaluation was written during the heat of this controversy, and [they] based [their] evaluation upon the best information [they] had available at the time." (Board R. 15, 17, 20)

During the proceedings in Mr. Roth's 1989 appeal to the Board, each of these three raters was also forwarded the AFMPC's recommendation, which was to deny Mr. Roth the correction of his March 1984 OER. In response, Colonel Satz stated in a letter to the Board that during a phone call from "higher headquarters" that addressed both the investigation and the March 1984 OER, "[t]he option provided to Colonel Coward and I at that time was to downgrade at least one block in Captain Roth's OER or else .... In the absence of the above, Captain Roth would not have been downgraded in Block 9, Professional Qualities." (Board R. 28) Colonel Sawyer likewise stated, "It was precisely because the investigation was ongoing and serious accusations were being made against Captain Roth that I was directed to downgrade block 9. I had originally marked the block 'well above standards,' but was directed by Colonel Satz and Colonel Coward to reaccomplish the OER because we could not ignore the accusations." (Board R. 33) Colonel Coward confirmed this sequence of events:

> The Ninth Air Force Commander and I had a discussion about the allegations .... The Ninth Air Commander and I agreed that the OER on Captain Roth should be rewritten and block nine should reflect the apparent off duty indiscretions of Captain Roth. The rating and reviewing officials agreed with this

decision, and the OER was rewritten .... I know that the decisions concerning Captain Roth were honestly but poorly made and based solely on unsubstantiated allegations.

(Board R. 35) It is clear that AFR 36–10, paragraph 3–14(a) was violated when Item 9 of the Professional Qualities category was downgraded to "Meets Standard" on Mr. Roth's March 1984 OER.

As noted above, the Board did grant Mr. Roth relief for this violation in 1989. *In the Matter of Roth* (Oct. 31, 1989). The Board recommended that Item 9 on Mr. Roth's March 1984 OER be corrected to reflect a "Well Above Standard" rating, that certain negative comments be deleted, and that the comment "Behavior and bearing were exemplary" be inserted. *Id.* at 3. The Board further recommended that Mr. Roth be considered for promotion to major by an SSB for each selection board in which the corrections it had ordered were not a matter of record. *Id.*

The Court of Federal Claims determined that the Board failed to afford Mr. Roth complete relief, however. Thus, it upgraded the indorsement levels on three of his OERs; ordered the removal of the notation "Corrected Copy" from his March 1984 OER; ordered that recommendations for approval of an end-of-tour decoration for his service at Shaw AFB be forwarded for consideration; and ordered that an end-of-tour decoration be awarded for his service at Ramstein AFB. The court also ordered the insertion of an AF Form 77 in Mr. Roth's record explaining the lack of an OER for the eleven months prior to his separation from the Air Force in 1989, and the insertion of an AF Form 475, Training Report, to reflect AFIT sponsorship of his attendance at a graduate school program during the period that he was involuntarily separated. In addition, the court voided Mr. Roth's 1993 and 1994 nonselections for

promotion to lieutenant colonel. We address these record corrections in turn.

C. *Indorsement Levels on March 1984 and January and June 1985 OERs*

 Mr. Roth's June 1983 OER had been indorsed by the Vice Commander of Ninth Air Force, Brigadier General Robert McCann. The indorsement on his March 1984 OER, however, dropped to that of Colonel Coward, serving as Ninth Air Force Inspector General. Not only then was Mr. Roth's March 1984 OER substantively downgraded, but also Colonel Coward admitted that "[t]he false allegations against [Mr. Roth] preempted [his] intentions" of requesting the same level of indorsement in 1984 that Mr. Roth had received in 1983. (Board R. 140) This reflects a violation of AFR 36–10, paragraph 3–14(a), for it demonstrates that the investigation against Mr. Roth, which was not complete as of the closing date of the March 1984 OER, was considered in connection with the level of indorsement on Mr. Roth's March 1984 OER.

In turn, the downgrade in the indorsement level in March 1984 precipitated subsequent downgrades in the indorsement levels on Mr. Roth's January and June 1985 OERs. On both, Mr. Roth was indorsed only by a colonel, rather than Brigadier General McCann. Lieutenant Colonel William Atkinson, the additional rater on Mr. Roth's January 1985 OER, admitted that

> [b]ecause of the previously documented substandard performance, as reflected in that now-corrected OER of 21 June 1983 through 27 March 1984, Major Roth's following OER, from 28 Mar 84 through 28 Jan 85, for which I was the additional rater, could also not be sent forward for the 9th Air Force Vice Commander's indorsement.... This OER for duty with 9AF/IG would most certainly have been forwarded for the Vice Commander's indorsement had it not been for the

previous incident for which Major Roth has since been absolved of any wrongdoing, and the substandard OER of 21 June 1983 through 27 March 1984, which has now been corrected.

(Board R. 138)

Similarly, both the rater and additional rater on Major Roth's June 1985 OER, Lieutenant Colonel Robert Heller and Brigadier General John Garrison, respectively, explained that the January and June 1985 OERs "would most certainly have been forwarded for the Vice Commander's indorsement had it not been for the previous incident for which Major Roth has since been absolved of any wrongdoing, and for the substandard OER of 21 June 1983 through 27 March 1984, which has now been corrected." (Board R. 136, 139) In addition, the Vice Commander himself, Brigadier General McCann, confirmed that "allegations of misconduct by Capt. Roth, subsequently found to be without basis, drove the decisions by rating and additional rating officers not to forward Capt. Roth's OERs to me for indorsement." (Board R. 145) General McCann also stated that he would have indorsed all three OERs had they been forwarded to him, and he requested that the Board correct any OER shown not to have been forwarded to him because of the allegations against Mr. Roth to reflect his indorsement. (Board R. 145)

It is therefore clear that the lowered indorsements on Mr. Roth's March 1984 and January and June 1985 OERs resulted directly from the initial violation of AFR 36–10, paragraph 3–14(a), the downgrading of Item 9 on his March 1984 OER, and constituted independent violations of that regulation as well. Notably, the AFMPC agreed in its advisory opinion to the Board and conceded that if it chose, the Board could order the OERs to be reaccomplished. Memorandum from the AFMPC

to the Board at 4. Because of these violations of AFR 36–10, the Court of Federal Claims determined the decision to lower the indorsement levels on all three OERs to be a justiciable military decision. We agree, and we affirm the decision to order that Mr. Roth's March 1984 and January and June 1985 OERs be reaccomplished to reflect the indorsement of then-Vice Commander Brigadier General McCann.

### D. "Corrected Copy" Notation on March 1984 OER

■ In 1989, the Board corrected Mr. Roth's March 1984 OER by upgrading Section III, Item 9, to "Well Above Standard." *In the Matter of Roth,* slip op. at 3 (Oct. 31, 1989). In accordance with AFR 31–11, table 4, note 7 (Mar. 15, 1990), the OER was also marked with the notation "Corrected Copy." [11] The necessity for this notation arose as a direct result of the improper downgrading of Mr. Roth's March 1984 OER in violation of AFR 36–10, paragraph 3–14(a). Had the March 1984 OER been properly prepared when it was first issued, it would not have been necessary to correct it later. We therefore agree with the Court of Federal Claims that this issue too is a justiciable military decision.

■ Mr. Roth argued before the Board that the appearance of "Corrected Copy" on his OER was prejudicial to him in his consideration by subsequent selection boards. We explained in *Sanders* that because regulations prescribe that OERs are to be objective and prepared in a certain way, "[i]f a particular officer's OER has not been so prepared and that defect could have resulted in his nonselection for promotion, this is legal and factual error and an injustice to the officer as well."

594 F.2d at 814. The Court of Federal Claims concluded, based on the text of note 7, that the Board has discretion respecting the language that may be used upon correcting an OER (as evidenced by the caveat "Unless otherwise directed by the Board"). *Roth,* 56 Fed. Cl. at 253. It therefore ordered the Board to apply discretionary language, instead of "Corrected Copy," on Mr. Roth's March 1984 OER.

We do not agree with the Court of Federal Claims on this point. The reason is that we are unable to discern any error in the addition of the notation "Corrected Copy" on the March 1984 OER. Not only was the notation placed on the OER pursuant to regulation, but before the Board Mr. Roth offered no support for his assertion that the notation was prejudicial. Finally, Mr. Roth has not even argued the point on appeal. Accordingly, we reverse the court's decision insofar as it directed removal of the "Corrected Copy" notation.

### E. Shaw AFB Decoration

■ As noted, from June 1982 to the summer of 1985, Mr. Roth was assigned to Shaw AFB. Upon his transfer to Ramstein AFB during the summer of 1985, he did not receive an end-of-tour decoration commemorating his three years of service at Shaw AFB. Although the Air Force's failure to award this decoration did not itself violate any Air Force regulation or statute, before the Board Mr. Roth presented unrebutted evidence that it was the direct result of his improperly downgraded March 1984 OER. In their statements to the Board, General Garrison, Lieutenant Colonel Atkinson, and Lieutenant Colonel Heller, each within Mr. Roth's former chain of command, confirmed that his performance "ordinarily would have warrant-

---

**11.** Note 7 states, "Unless otherwise directed by the [Board]: a. Corrected reports will be annotated according to note 2, above." Note 2 explains that "[t]he front margin of the original or primary copy of the corrected report will be annotated 'CORRECTED COPY.'"

ed an end-of-tour medal when he [transferred] from Shaw AFB had it not been for the now corrected [March 1984] OER ...." In light of this evidence that the absence of the decoration flowed directly from the original violation of AFR 36–10, paragraph 3–14(a), we agree that the decision not to award Mr. Roth an end-of-tour decoration for his service at Shaw AFB presents a justiciable military decision.[12]

 The AFMPC did not recommend this correction to Mr. Roth's record because, unlike the statements he provided regarding the Ramstein AFB decoration, discussed in the next section, Mr. Roth did not provide a similar statement from the approving authority that the Shaw AFB decoration would have been approved had the recommendations for it gone forward. Memorandum from the AFMPC to the Board, at 4. The Board, in turn, "found no evidence that the members of [Mr. Roth's] chain of command were precluded from recommending him for an end of tour decoration when he departed Shaw AFB ... the applicant has not provided reaccomplished reports or a recommendation for the requested award prepared by the appropriate officials ...." Consequently, the

Board did not award Mr. Roth the decoration. *In the Matter of Roth,* slip op. at 8–9 (June 2, 1999). The Court of Federal Claims, however, explained that Mr. Roth had provided evidence from his former chain of command that he would have been recommended for the award. The court therefore directed the Board to order the recommendations for the award to be sent forward. We agree that the recommendations to award Mr. Roth an end-of-tour decoration for his service at Shaw AFB should be forwarded to the proper authority for a determination whether the award should be issued.

**F. *Ramstein AFB Decoration***

Mr. Roth also did not receive an end-of-tour decoration upon his separation from Ramstein AFB. Major Roth's commander at the time of his separation, Lieutenant Colonel Walter Harris, stated that had an OER been prepared for Mr. Roth, it would have reflected "honorable and competent success oriented service." (Board R. 133) Moreover, had Mr. Roth's departure been due to "causes other than separation," Lieutenant Colonel Harris would have considered him for an end-of-tour medal

---

**12.** Mr. Roth presented testimony before the Board regarding the effect of his failure to receive end-of-tour decorations. For example, Major General Richard J. O'Lear, USAF, Retired, who would have been the senior rater on Mr. Roth's OER and the approval authority for an end-of-tour award, explained:
> Although there is no guarantee for any award, each member is usually considered for an award at the end of his normal tour .... In general, any officer who serves honorably, competently, and does "more than the average," is most likely to receive an award .... I would certainly support such an award, if [Mr. Roth's] immediate supervisors felt his performance was above average.

(Board R. 135) In addition, General Garrison, an additional rater for Mr. Roth's June 1985 OER, concluded that "[t]he lower indorsement levels and lack of end-of-tour med-

al potentially put Major Roth at a significant and unfair disadvantage when competing against his peers both before selection boards and for assignments." (Board R. 137) *See also* Letter from Lieutenant Colonel Atkinson to the Board (Board R. 138); Letter from Col. Heller to the Board (Board R. 139); Letter from Colonel Coward to the Board ("In my judgment ... no end-of-tour medals ... could only have had a negative effect on the promotion board.") (Board R. 140). Mr. Roth also included a letter from a member of a promotion board, detailing what its members looked for in selecting lieutenant colonels, that stated, "Medals helped and were a discriminator if you didn't get one when you went PCS." Letter from Colonel Felix Sanchez, Vice Commander USAF, to All 377 ABW Supervisors of Officers (Nov.1993). (Board R. 141)

"commensurate with [his] evaluation of [Mr. Roth's] accomplishments ...." (Board R. 133) General O'Lear, the approval authority for the medal at the time, explained to the Board that he would have approved a recommendation for the medal had it been submitted by Mr. Roth's commanding officers, and that he supported a correction of Mr. Roth's record to that effect. (Board R. 135) These views were shared by Colonel Richard L'Heureux, Director, Plans and Systems for USAFE/IN at the time of Mr. Roth's separation and a member of his immediate supervisory chain. (Board R. 134)

The lack of an end-of-tour medal from Ramstein AFB flowed directly from the violation committed on Mr. Roth's March 1984 OER, which infected his January and June 1985 OERs. The evidence establishes that the downgraded indorsement levels resulted in his separation, which in turn resulted in his not receiving an end-of-tour decoration for his service at Ramstein AFB. The Court of Federal Claims properly found this military decision to be justiciable in light of the statements by members of Mr. Roth's former chain of command.

The AFMPC concluded, based on these statements from members of Mr. Roth's chain of command, that the Board could order the decoration to be awarded. Memorandum from the AFMPC to the Board at 5. The court directed the Board to award Mr. Roth the medal. We agree, and we affirm the trial court's order that Mr. Roth's record be corrected to reflect the award of an end-of-tour decoration upon his departure from Ramstein AFB.

G. *Lack of an OER for the Eleven Months prior to January 31, 1989*

 The absence of an OER for the eleven-month period from March 8, 1988, to January 31, 1989, prior to Mr. Roth's involuntary discharge, was the direct result of the initial violation of AFR 36–10, paragraph 3–14(a), for Mr. Roth would not have been separated had his March 1984 OER not been improperly downgraded. In addition, the failure to provide Mr. Roth an OER for this period constituted a violation of AFR 36–10, table 3–1, note 4 (Aug. 1, 1988). That provision mandates that a separated officer receive an OER unless his separation is either voluntary or for misconduct under AFR 36–2, neither of which applied to Mr. Roth. In view of AFR 36–10, this military decision is justiciable.

 The AFMPC admitted this violation, and offered that the Board could order a form to be placed in Mr. Roth's record indicating that no rating was available for the eleven-month period through no fault of Mr. Roth's. Memorandum from the AFMPC to the Board at 4. We agree, and we affirm the Court of Federal Claims' decision to order the placement of an AF Form 77 in Mr. Roth's record with language to the effect that "a report for this period is not available for administrative reasons which were not the fault of [Mr. Roth]."

H. *AFIT Sponsorship*

 After his separation on January 31, 1989, Mr. Roth did not return to active duty until June 27, 1991, resulting in an approximately twenty-nine-month gap in his record. Mr. Roth sought to account for this gap with an AF Form 475 Training Report indicating that the graduate studies he had been pursuing while he was separated were sponsored by AFIT. The AFMPC recommended against the sponsorship, explaining that the gaps in Mr. Roth's record were accounted for by forms prescribed by, *inter alia*, Air Force Instruction ("AFI") 36–2406, AFR 31–3, and AFR 31–11.[13] Memorandum from the

---

**13.** AFI 36–0–2406 details the procedures governing AF Form 77, Letter of Evaluation

Sheet, which is "[u]sed to substitute for a

AFMPC to the Board at 6. Because Air Force regulations do prescribe how the Air Force accounts for gaps in an officer's record, we find this decision to account for Mr. Roth's absence to be justiciable.

In 1991, the Board declined Mr. Roth's request for AFIT sponsorship because the Air Staff indicated there was no education quota in Mr. Roth's degree area during fiscal year 1991. *In the Matter of Roth,* slip op. at 2–3 (Jan. 30, 1991). The Board instead recommended that Mr. Roth's record be corrected to reflect that he was ordered Permanent Change of Station (PCS) to his home . . . ." *Id.* at 3. An AF Form 77 was placed in Mr. Roth's record stating, "No report available for the period 8 Mar 88 through 26 Jun 91. Member restored to active duty by Direction of the Secretary of the Air Force under AFR 31–3, Air Force Board for the Correction of Military Records." In 1999 the Board again declined to award Mr. Roth AFIT sponsorship for this gap because he was not actually in an AFIT training program during those twenty-nine months; therefore, to insert an AFIT Training Report "would create an erroneous and misleading record." *In the Matter of Roth,* slip op. at 8 (June 2, 1999).

 Mr. Roth explains that had he not been discharged as a result of the improperly prepared March 1984 OER, he would have received evaluations during these twenty-nine months, and that the Air Force's failure to account for this gap was prejudicial to his record. The Court of Federal Claims thus ordered the Board to issue the AFIT Training Report as part of its duty to Mr. Roth to take steps "to grant thorough and fitting relief." *Roth,* 56 Fed.Cl. at 251 (citing *Caddington,* 147 Ct.Cl. at 634, 178 F.Supp. 604). Because the court did not identify any statute or

regulation that had been violated, however, we disagree with its decision. We also disagree with the Board's decision to permit Mr. Roth's record to reflect his "home" as his place of active duty, however. This too fails to adequately remedy the gap in Mr. Roth's record, which directly resulted from the initial violation of AFR 36–10, paragraph 3–14(a). We thus modify the ruling of the Court of Federal Claims on this point by ordering that the AF Form 77 in Mr. Roth's record regarding his twenty-nine month absence from the service be corrected to properly explain that both the gap and the resultant lack of OERs for this period occurred through no fault on his part. We leave the exact wording of the correction to the discretion of the Board, with the caveat that the language must be nonprejudicial to Mr. Roth's future prospects for promotion selection.

We think this relief, coupled with the award of an AF Form 77 that explains in a nonprejudicial manner the lack of an OER for the eleven months from March 8, 1988, to January 31, 1989, will adequately substitute for the current AF Form 77 in Mr. Roth's record that reads, "No report available for the period 8 Mar 88 through 26 Jun 1991. Member restored to active duty . . . ." We agree with Mr. Roth that the language on this form, quoted above, erroneously implies that Mr. Roth was not on active duty for the entire forty months, when in fact, he served on active duty from March 8, 1988, to January 31, 1989, before he was separated—he simply failed to receive the OER he had earned for those eleven months. This error will be remedied by the separate AF Forms 77 we have ordered to be issued: one for the eleven months prior to his 1989 separation for

missing *evaluation report, cover gaps in performance records,"* and other purposes. AFR 31–11 addresses the procedures for the cor-

rection of OERs, while AFR 31–3 identifies potential record corrections that may be undertaken by the Board.

which he should have received an OER by regulation, and one explaining the twenty-nine month gap in his service in a manner that is not prejudicial to him.

### I. *Summary*

For the reasons set forth above, we affirm all record corrections ordered by the Court of Federal Claims, with the exception of the removal of the notation "Corrected Copy" from the March 1984 OER and the issuance to Mr. Roth of an AFIT Training Report to account for his twenty-nine month gap in service. We reverse the court's decision insofar as it directed the removal of the "Corrected Copy" notation from the March 1984 OER. We modify the court's decision insofar as it directed issuance of an AFIT Training Report. Instead of an AFIT Training Report, we direct that an AF Form 77 be placed in Mr. Roth's record explaining his twenty-nine month absence from the service in language that is nonprejudicial to his prospects for promotion by future selection boards.

### IV.

 As noted, after ordering corrections to Mr. Roth's record, the Court of Federal Claims directed the Board to convene SSBs to determine whether, if Mr. Roth had gone before the 1993 and 1994 lieutenant colonel selection boards with his record in its corrected form, he would have been promoted. In the meantime, the court ordered the 1993 and 1994 nonselections for promotion to lieutenant colonel voided and Mr. Roth reinstated to active duty at the rank of major, retroactive to July 1, 1995, with back pay and benefits.

The government argues that the Court of Federal Claims erred in the relief it granted Mr. Roth. It contends that, assuming corrections to Mr. Roth's record were in order, the court simply should have referred his corrected record to SSBs for a determination as to whether, if he had gone before the 1993 and 1994 lieutenant colonel selection boards with his record as corrected, he would have been promoted. The government urges that the court's action voiding the 1993 and 1994 nonselections and ordering Mr. Roth reinstated to active duty was improper and contrary to our decisions in *Porter* and *Richey*.

For his part, Mr. Roth argues that the Court of Federal Claims did not err in voiding his nonselections and in reinstating him to active duty pending SSB action. He asserts that, under the Tucker Act, the Court of Federal Claims may award equitable relief only "incident of and collateral to" a money judgment. 28 U.S.C. § 1491(a)(2). If no money judgment is awarded, Mr. Roth reasons, no equitable relief is available. According to Mr. Roth, if the court did not void his 1993 and 1994 nonselections, reinstate him, and award him back pay, it could not direct any corrections to his record. Thus, Mr. Roth asserts that what the court did "complied perfectly with the strictures of Tucker Act jurisdiction." Mr. Roth argues that *Porter* and *Richey* are inapposite because they address the authority of correction boards and the SSB process, rather than the parameters of Tucker Act jurisdiction, which is what he says is at issue.

 We see no error in the decision of the Court of Federal Claims to remand Mr. Roth's case to the Board with the instruction that the Board correct Mr. Roth's record as directed and then convene SSBs for the 1993 and 1994 lieutenant colonel selection boards pursuant to 10 U.S.C. § 628(b). We recognize that, generally, the proper approach after a correction board makes record corrections is for the board to decide for itself whether or not to convene SSBs. *See Porter*, 163 F.3d at 1324 ("[I]n the post-DOPMA context, the [Board] may exercise its section 1552 authority by following the statutory di-

rective in section 628(b)(1)(A); that is, convening an SSB...."). Thus, if the correction board determines that in view of the corrections that have been made in an officer's record, "the action of the [original selection] board which considered the officer was contrary to law or involved material error of fact or material administrative error," the board may convene an SSB. 10 U.S.C. § 628(b)(1)(A); *see Richey*, 322 F.3d at 1324; *Porter*, 163 F.3d at 1324.[14]

In this case, however, we agree with the Court of Federal Claims that the appropriate course is to remand the case to the Board with the instruction that the Board correct Mr. Roth's record and then convene SSBs for the 1993 and 1994 selection boards. In view of the record corrections that will be made in Mr. Roth's record, we conclude that the actions of the original selection boards that considered Mr. Roth for promotion involved, at a minimum, material error of fact, and that it would be arbitrary and capricious for the Board not to convene SSBs. *Cf. Godwin v. United States*, 338 F.3d 1374, 1380–81 (Fed.Cir. 2003) (ruling, in part, that the correction board committed legal error in determining that no error or injustice occurred in the Coast Guard's failure to provide Mr. Godwin with an OER in violation of Coast Guard regulations, reversing the dismissal of the complaint, and remanding the case). Indeed, on appeal the government does not seem to disagree. It states,

[I]n the case of an error that might have led to a different result by the board, the matter should be remanded for consideration by an SSB with the records corrected .... If errors in Mr. Roth's records entitled him to SSBs, the proper action would be to remand his case, subject to action by the SSBs, and not to return him to active duty before SSB determination of whether he would have been promoted.

Br. Def.-Appellant at 21.

We do agree with the government, however, that the Court of Federal Claims went too far when it voided Mr. Roth's 1993 and 1994 nonselections for promotion to lieutenant colonel and ordered him reinstated to active duty at the rank of major, retroactive to July 1, 1995, with back pay and benefits. This issue was squarely addressed in *Porter*, which also involved the Air Force Board for the Correction of Military Records (referred to in the case as the "Air Board"). One of the two questions presented in *Porter* was "must the Air Board in every instance couple a recommendation to convene an SSB with voidance of previous passovers?" 163 F.3d at 1306. After an exhaustive review of pre-DOPMA correction board law and 10 U.S.C § 628, the *Porter* court answered this question in the negative, stating:

We ... conclude and hold as a matter of statutory interpretation that nothing in section 628 requires the constructive

---

**14.** If the correction board declines to convene an SSB because it determines that even in the face of the record corrections that have been made, the actions of the original selection boards were neither contrary to law nor involved material error of fact or material administrative error, the officer may obtain review of that decision in the Court of Federal Claims, provided, as outlined above, that the court has jurisdiction in the case. By the same token, if a correction board orders an SSB convened and sustains a decision of the SSB denying an officer's promotion, the offi-

cer may obtain review of that decision also in the Court of Federal Claims. In any event, the court's review in either case is limited essentially to an Administrative Procedure Act standard of review: whether the Board's decision is arbitrary, capricious, contrary to law, or unsupported by substantial evidence. *Haselrig*, 333 F.3d at 1355 (citing *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed.Cir.1986)). Section 628(g)(2), part of the 2001 amendments to the statute, codifies this standard of review. *See Richey*, 322 F.3d at 1324–25 (applying 10 U.S.C. § 628(g)(2)).

reinstatement—via the purge of at least one of the two passovers from the officer's record—of a twice passed over and discharged officer in order to present the officer's record to an SSB.

*Id.* at 1321. We pointed out in *Porter* that whether or not previous passovers are voided when an SSB is convened is a matter within the discretion of the correction board: "In appropriate cases, we may assume that the Air Board will exercise its discretion to void passovers." *Id.* at 1323. In addition, we instructed that "[i]f the Air Board stays action on a request to void passovers pending action by an SSB, it must subsequently grant or deny the request to void the initial passover to close out the petition for correction." *Id.* Four years after *Porter*, we recognized in *Richey* the discretion that lies with the Board vis-à-vis the question of whether an officer's previous passovers are voided pending SSB action when we stated, "[U]nder *Porter*, the existence of error in the original promotion board decision does not entitle the appellant to any relief." *Richey*, 322 F.3d at 1328.[15]

Based upon *Porter* and *Richey*, we hold that the Court of Federal Claims erred when it voided Mr. Roth's two nonselections for promotion to lieutenant colonel and ordered him reinstated to active duty.[16] We therefore reverse that part of the court's decision.

## CONCLUSION

In conclusion, (1) we affirm the following corrections by the Court of Federal Claims to Mr. Roth's record: (i) upgrading the indorsement levels on the March 1984 and January and June 1985 OERs; (ii) ordering the forwarding of recommendations for approval of an end-of-tour decoration for

---

15. Though inapplicable to Mr. Roth, the 2001 amendments to section 628 impose the same restriction on the authority of the court to award relief:

> (h) Limitations of other jurisdiction.—No official or court of the United States may, with respect to a claim based to any extent on the failure of a person to be selected for promotion by a promotion board—
> (1) consider the claim unless the person has first been referred by the Secretary concerned to a special selection board convened under this section and acted upon by that board and the report of the board has been approved by the President; or
> (2) except as provided in subsection (g), *grant any relief on the claim unless the person has been selected for promotion by a special selection board convened under this section to consider the person for recommendation for promotion* and the report of the board has been approved by the President.

107 Pub.L. No. 107, § 503(b), 115 Stat. at 1084 (codified at 10 U.S.C. § 628(h)) (emphasis added).

16. Mr. Roth is incorrect in his assertion that because under the Tucker Act, equitable relief is available only "incident of and collateral

to" a money judgment, the Court of Federal Claims first must reinstate him and award him back pay in order to subsequently order corrections to his record. *Porter* and *Richey* make that clear. In any event, in pre-DOPMA military discharge cases, the court historically first assessed the merits of an officer's claim of errors in his military record. Once the court determined on the merits that an officer's record contained sufficiently detrimental errors, only then would it reinstate the officer and award back pay. *See, e.g., Sanders*, 594 F.2d at 817–20 (concluding that OERs challenged by the officer did not fairly portray his record and stating that "upon his corrected record," the officer should be given restoration to active duty and reconsideration for promotion by a selection board); *Yee v. United States*, 206 Ct.Cl. 388, 512 F.2d 1383, 1388 (1975) (addressing the merits of the officer's claim that his record was defective before ultimately reinstating him and awarding him back pay); *Caddington*, 147 Ct.Cl. at 631–35, 178 F.Supp. 604 (same). It is illogical to contend that the court, before ordering corrections to an officer's record, must first reinstate him and award him back pay—the reinstatement and award of back pay only follow after sufficient severity of the errors in the officer's record is established on the merits.

Mr. Roth's service at Shaw AFB; (iii) ordering that an end-of-tour decoration be awarded for Mr. Roth's service at Ramstein AFB; and (iv) adding an AF Form 77 to Mr. Roth's record explaining the lack of an OER for the eleven months from March 8, 1988, to January 31, 1989.(2) We affirm the court's remand of the case to the Board with the instruction that SSBs be convened for the 1993 and 1994 lieutenant colonel selection boards. (3) We modify the court's decision to award an AFIT Training Report to account for the twenty-nine month gap in Mr. Roth's military service and order instead that an AF Form 77 that explains that the gap occurred through no fault of his own be inserted in his record. (4) We reverse the court's decision insofar as it (i) ordered the removal of the "Corrected Copy" notation on the March 1984 OER and (ii) voided the 1993 and 1994 nonselections for promotion to lieutenant colonel and retroactively reinstated Mr. Roth at the rank of major with back pay and benefits. (5) We remand the case to the Court of Federal Claims, which is instructed to remand the case to the Board for further proceedings, with the direction that the Board make the appropriate record corrections and convene SSBs for the 1993 and 1994 lieutenant colonel selection boards.

### COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART, MODIFIED–IN–PART, REVERSED–IN–PART, and REMANDED.*