NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**WESLEY H. OSBURN,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

_____

2024-2025

_____

Appeal from the United States Court of Federal Claims in No. 1:22-cv-01689-AOB, Judge Armando O. Bonilla.

_____

Decided:  December 23, 2025

_____

WOJCIECH KORNACKI, Pentagon Law Office, Washington, DC, argued for plaintiff-appellant.

MATTHEW LEWIS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee.  Also represented by ERIC P. BRUSKIN, PATRICIA M. MCCARTHY, BRETT SHUMATE.

_____

Before DYK, PROST, and REYNA, *Circuit Judges*.

DYK, *Circuit Judge.*

Wesley Osburn was separated from the United States Coast Guard on August 15, 2018, and subsequently brought an action in the United States Court of Federal Claims ("Claims Court") challenging his separation and seeking backpay and reinstatement. The Claims Court granted judgment for the government on the administrative record. We *affirm*.

BACKGROUND

I

Mr. Osburn's service in the Coast Guard began on December 2, 2014, and during his service he achieved the rank of Third-Class Petty Officer and served as a culinary specialist.

Mr. Osburn does not dispute some of the relevant facts. On an evening in July 2015, he hosted a social gathering in his home. While he was there, he gave alcohol to a woman who was not yet of drinking age. At some point in the evening, she fell asleep, and Mr. Osburn carried her to his bed. Later in the evening, Mr. Osburn and the woman had sexual intercourse.

Nonetheless, the parties paint the encounter in dramatically different colors. In Mr. Osburn's view, this was a consensual sexual encounter that he believed was precipitating a romantic relationship. In the government's view, Mr. Osburn provided an underage woman with alcohol, pressured her into sexual activity that she did not want, and failed to cease his conduct after she told him to stop.

Several months after these events, another servicemember reported that Mr. Osburn may have committed a sexual assault. The Coast Guard Investigative Service ("CGIS") subsequently began an investigation in which the alleged victim was interviewed. In her written statement, the alleged victim recalled repeatedly telling Mr. Osburn that she did not wish to have sex with him, but that she

eventually relented "out of vulnerability and just wanting to be able to go home" because she "was scared that if [she] didn't give in he might get physical." J.A. 416.[1] Mr. Osburn was also interviewed and allegedly made false statements including whether he remembered certain details of the encounter and whether he provided the alleged victim with alcohol.

Based on the findings in the investigation, the Coast Guard initiated criminal court-martial proceedings against Mr. Osburn under three provisions of the Uniform Code of Military Justice ("UCMJ"). First, the Coast Guard charged five specifications of Article 107, 10 U.S.C. § 907, for false official statements based on various statements Mr. Osburn made during his interview. Second, the Coast Guard charged two specifications of Article 120, 10 U.S.C. § 920, for sexual assault. Third, the Coast Guard charged one specification of Article 134, 10 U.S.C. § 934, for conduct of a nature to bring discredit upon the armed forces based on Mr. Osburn's provision of alcohol to an underaged person in violation of state law.

A preliminary hearing took place. *See* Manual for Courts-Martial ("MCM"), pt. II, R.C.M. 405. The Preliminary Hearing Officer issued a report finding that there was only probable cause for one specification of Article 107, based on Mr. Osburn's denial that he made the alleged statement, "If you don't hit it I will," a reference to other individuals initiating a sexual encounter with the alleged victim; one specification of Article 120, based on digital penetration (not sexual intercourse); and the one specification of Article 134 (providing alcohol to an underage person). The officer recommended proceeding with nonjudicial punishment for the specification of Article 134, but that the other charges should be dropped based on insufficient or unpersuasive evidence. In response to the officer's

---

[1] Citations to the J.A. refer to the Joint Appendix filed by the parties. Dkt. No. 18.

recommendations, one specification of Article 107 was dropped, and some other specifications were modified, but the proceedings continued as to all three charges. Shortly before trial was set to take place, the alleged victim stated that she did not wish to testify, and the court-martial charges were dismissed.[2]

## II

In April 2017, Mr. Osburn's sector commander initiated formal separation proceedings alleging "commission of a serious offense" under Coast Guard Military Separations Manual, COMDTINST M1000.4 Art. 1.B.17.b(3), and seeking a punitive discharge. This proceeding, which culminated in Mr. Osburn's separation, is the subject of this appeal.

A member who, like Mr. Osburn, has served for fewer than eight years, is entitled to certain procedural safeguards in separation proceedings. COMDTINST M1000.4 Art. 1.B.17.e. He must be informed in writing of the reason for the discharge, he must have the opportunity to make a written statement, he must be afforded the opportunity to consult with a lawyer, and the case must be sent to the

---

[2] In a subsequent nonjudicial proceeding, Mr. Osburn was found guilty of one specification of Article 107 and one specification of Article 134. The record before us contains virtually no details of that nonjudicial proceeding, which appears to have been authorized by 10 U.S.C. § 815, which provides that commanding officers may impose certain disciplinary punishments—but not discharge—"for minor offenses without the intervention of a court-martial." 10 U.S.C. § 815(b). The discipline imposed in that proceeding is unclear from the record. Mr. Osburn does not challenge that proceeding in this appeal but rather challenges the result in another proceeding that resulted in his separation.

Personnel Service Center for action. *Id.*; *see also id.* Art. 1.B.1.a (establishing that the Commander, Coast Guard Personnel Service Center, is the discharge authority). First-time offenders may be considered for a Second Chance Program, whereby the first flag officer (here, Mr. Osburn's district commander) is authorized to waive the discharge. *Id.* Art. 1.B.39.b. If the first flag officer declines to waive the discharge, then he must endorse the separation and forward the recommendation to the Commander. *Id.* Art. 1.B.39.c(1).

The sector commander's notice to Mr. Osburn stated the following:

> You were accused of sexual assault by a civilian from an incident in July 2015. The following additional information was disclosed during the subsequent CGIS investigation. On 10 July 2015, you provided alcohol to the alleged victim, who at the time was under 21 years old in violation of 67-1-81 of the Code of Mississippi, a criminal statute in the State of Mississippi, which is a violation of Article 134 of the UCMJ. When interviewed by CGIS, you made several false official statements regarding purchasing alcohol for the alleged victim, picking up and carrying the alleged victim to a bedroom, and [sic] involvement in the sexual activity with the alleged victim. These false statements violate Article 107 of the UCMJ, and carry a maximum punishment of a punitive discharge. Your conduct is in direct conflict with the Coast Guard's Core Values.

J.A. 98. Mr. Osburn, who was represented by counsel, responded with a statement challenging the sufficiency of the evidence. As part of his response, he requested to be considered under the Second Chance Program.

On May 15, 2017, the sector commander formally recommended Mr. Osburn's separation based on his false

official statements, invoking Article 107 with the following language:

> CS3 Osburn was accused of sexual assault by a civilian from an incident in July 2015. The alleged victim reported CS3 Osburn coerced her into having sexual intercourse and digitally penetrated her anus despite her repeatedly stating this activity was not wanted. The subsequent CGIS investigation revealed that CS3 Osburn provided alcohol to the alleged victim on the night of the reported sexual assault and also made several false official statements to CGIS in the course of their investigation. Court-martial charges were preferred against CS3 Osburn . . . . Despite the lack of a judicial conviction, *the investigation established sufficient evidence to demonstrate CS3 Osburn violated Article 107 and Article 134 of the UCMJ and of which the violation of Article 107 carries a maximum punishment of a punitive discharge.* CS3 Osburn's conduct is in direct conflict with the Coast Guard's Core Values.

J.A. 96 (emphasis added). On June 12, 2017, the district commander endorsed the sector commander's recommendation. But he also stated in his view Mr. Osburn violated Article 128, assault consummated by battery, when he picked up the alleged victim when she was sleeping and carried her to his bedroom. By endorsing Mr. Osburn's separation, the district commander implicitly denied Mr. Osburn's request to avoid discharge under the Second Chance Program.

The Personnel Service Center, through a panel of two reviewers, authorized Mr. Osburn's separation. On a form titled "Separations Panel Sheet," the first reviewer stated, "The [June 12, 2017,] endorsement gets me to where I need to be to concur with separation with a general [discharge] for sexual assault." J.A. 249. The second reviewer stated, "Concur." *Id.* Mr. Osburn was formally separated on

August 15, 2017.  His separation authorization form noted that he was separated under honorable conditions for misconduct for "Commission of a serious military or civilian offense" under the Coast Guard Military Separations Manual, COMDTINST M1000.4 Art. 1.B.17, and he was given the reenlistment code RE-4, which bars reenlistment. J.A. 248; *see* COMDTINST M1000.4 Art. 1.B.2.g(4).

Mr. Osburn then contested the characterization of his discharge before a Coast Guard Discharge Review Board (the "Review Board"), which has the power to adjust a discharge it finds either improper or inequitable.  10 U.S.C. § 1553; 33 C.F.R. § 51.5.  The Review Board determined that his discharge was proper, but inequitable, and upgraded his discharge status to an honorable discharge under COMDTINST M1000.4 Art. 1.D.8 for "Miscellaneous/General Reasons."  J.A. 176.  The Review Board apparently credited Mr. Osburn's evidence in finding that "the engagement of sexual activity was believed to be consensual."  J.A. 176.  But it made no finding that the false official statements charge was unsupported, seemingly sustaining those charges.  A dissenting member of the Review Board noted that even if "the claims of sexual assault were false, [Mr. Osburn] deliberately made false statements for personal gain," which was sufficient to sustain an under honorable conditions discharge.  J.A. 177.

Mr. Osburn then brought suit in the Claims Court under the Military Pay Act, codified at 37 U.S.C. § 204, challenging his separation and seeking backpay and reinstatement.  As is typical, *see Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003) (citing 28 U.S.C. § 1491(a)(2)), the Claims Court remanded to the Department of Homeland Security Board for Correction of Military Records (the "Corrections Board"), and Mr. Osburn submitted a petition requesting to have his discharge set aside.  The Corrections Board concluded that Mr. Osburn was properly discharged "because he made false official statements to the CGIS agents during his interview," J.A. 579, and issued a decision finding that Mr. Osburn did

not meet his burden to show, by the preponderance of the evidence, that his discharge was erroneous or unjust.

Mr. Osburn amended his complaint to challenge the Corrections Board's decision. The Claims Court subsequently granted the government's motion for judgment on the administrative record, affirming the Corrections Board decision. Mr. Osburn appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

### DISCUSSION

#### I

We review the Claims Court's grant of judgment on the administrative record de novo. *Roth v. United States*, 378 F.3d 1371, 1381 (Fed. Cir. 2004). The Claims Court may only overturn the decision of the Corrections Board if the decision "is arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Porter v. United States*, 163 F.3d 1304, 1312 (Fed. Cir. 1998); *accord Bader v. United States*, 97 F.4th 904, 909 (Fed. Cir. 2024). The Corrections Board itself "presum[es] administrative regularity on the part of Coast Guard and other Government officials," such that the "applicant has the burden of proving the existence of an error or injustice by the preponderance of the evidence." 33 C.F.R. § 52.24.

#### II

A regular enlisted member of an armed force may not be discharged except as provided by law. 10 U.S.C. § 1169. A member who was discharged in violation of law may bring an action related to the discharge and back pay in the Claims Court under the Military Pay Act. *See Roth*, 378 F.3d at 1384. Here, the Corrections Board and the Claims Court reviewed Mr. Osburn's discharge as modified by the Review Board.

Mr. Osburn first argues that he was discharged for two reasons: the alleged sexual assault in violation of Article 120, and the alleged false official statements in

violation of Article 107.[3]  He argues that if either charge is not sustained, then the Corrections Board was required to reverse his separation because an improper finding as to either charge could have resulted in the erroneous discharge.  However, this argument is unavailing because the Corrections Board found that Mr. Osburn was separated only for making false official statements, as the record established.  The sector commander's recommendation for a punitive discharge was explicitly based solely on Article 107.  To be sure, the district commander and separations panel both referenced other allegations in endorsing the sector commander's recommendation, creating a record that is less than clear.  For its part, the Review Board opined that Mr. Osburn's discharge could *not* be properly based on sexual assault because Mr. Osburn believed that the alleged victim consented to the sexual activity and modified the discharge accordingly.  Though the Claims Court concluded that Mr. Osburn was separated for both sexual assault and false official statements, the Corrections Board determined that Mr. Osburn was separated solely on the basis of the alleged false official statements.  This finding is not arbitrary, capricious, or unsupported by substantial evidence, so we need not reach Mr. Osburn's arguments that are premised on sexual assault being the basis for his discharge.  Under these circumstances the reference to Article 128 in the district commander's endorsement was harmless error because it did not in fact result in discipline.

## III

With regard to the false official statements charge, Mr. Osburn argues that there was not sufficient evidence to sustain a finding that he violated Article 107.  To sustain a discharge under Article 1.B.17.b, the offense must be

---

[3]  The maximum penalty for violating either of these articles includes a punitive discharge.  MCM pt. IV, paras. 41.d(1), 60.d(2).

established by a preponderance of the evidence. COMDTINST M1000.4 Art. 1.B.17.b(3).

Mr. Osburn primarily relies on the Preliminary Hearing Officer's recommendations that the court-martial charges based on false statements not be pursued. This reliance is misplaced as the Preliminary Hearing Officer's findings were not binding, MCM pt. II, R.C.M. 405(m)(1), and the regulation establishes that a contrary finding, even in a judicial proceeding, does not preclude the chain-of-command from finding that the evidence rose to the level of a preponderance, COMDTINST M1000.4 Art. 1.B.17.b(3).

The false statements charges concerned "several false official statements regarding purchasing alcohol for the alleged victim, picking up and carrying the alleged victim to a bedroom, and [Mr. Osburn's] involvement in the sexual activity with the alleged victim," the last apparently referring to Mr. Osburn stating he did not remember taking a shower with the alleged victim.[4]  J.A. 98.  We can assume the false statements for which Mr. Osburn received punishment were the statements for which he was charged.  As the Corrections Board concluded, there is substantial evidence in the administrative record that Mr. Osburn violated Article 107 by a preponderance of the evidence.

First, the Corrections Board found that Mr. Osburn made false official statements that he did not remember picking up the alleged victim and carrying her to his bedroom or taking a shower with the victim.  The Corrections Board noted that there is record evidence showing that in

---

[4]    While the court-martial proceedings concerned five specifications of false official statements, Mr. Osburn's separation appears to be based on three alleged false statements.  In the interview, Mr. Osburn admitted "[h]e had consensual sex with [the alleged victim] . . . in his bedroom."  J.A. 426.

Mr. Osburn's initial interview he remembered that the alleged victim was 19 years old while denying recollection of other details. We find no error in the Corrections Board's conclusion that it was "improbable that [Mr. Osburn] could remember so little of what happened but could remember [the alleged victim]'s exact age." J.A. 579.

Second, the Corrections Board noted that record evidence indicates Mr. Osburn denied that any alcohol was involved during the incident, but two witnesses stated that there was alcohol and that he gave alcohol to the alleged victim. We find no error in the Board's conclusion that this constituted substantial evidence supporting a finding that Mr. Osburn made a false official statement. Therefore, the Coast Guard could reasonably conclude that the evidence showed that Mr. Osburn violated Article 107 by the preponderance of the evidence and was accordingly entitled to discharge Mr. Osburn.

Although this record could allow for a different conclusion as to whether Mr. Osburn made false official statements, this does not mean that the decision that was made was arbitrary, capricious, or unsupported by substantial evidence. *See Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983); *Mote v. United States*, 110 F.4th 1345, 1354 (Fed. Cir. 2024). We conclude the Corrections Board's determination was not erroneous and that the Claims Court's decision should be affirmed.

**AFFIRMED**

COSTS

No costs.